# Attachment 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOAD FARAHI )<br><br>    Plaintiff, )<br>          v. )<br><br>FEDERAL BUREAU OF )<br>INVESTIGATION )<br><br>    Defendant. ) | Civil Action No. 1:15-cv-02122(RBW) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 21, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 239 employees who staff a total of ten (10) Federal Bureau of Investigation Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, amended by the OPEN Government Act of 2007; the Open

1

FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. I am aware of the FBI's handling of plaintiff's request for records on himself.

(4) This declaration has been submitted in support of the FBI's motion for bifurcation and proposed processing schedule.

## ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST

(5) By letter dated June 28, 2014, plaintiff, through counsel, submitted a FOIA request for "the complete record contained in [our] files regarding [Foad Karim Farahi]." (*See* **Exhibit A.**)

(6) By email dated June 30, 2014, plaintiff, through counsel, submitted a duplicate FOIA request. (*See* **Exhibit B.**)

(7) By letter dated July 8, 2014, the FBI acknowledged receipt of plaintiff's request and assigned it FOIA Request Number 1276672-000. The FBI also advised plaintiff it was searching the indices of the Central Records System for information responsive to his request. Lastly, the FBI stated it was considering his request for a fee waiver. (*See* **Exhibit C.**)

(8) By letter dated August 6, 2014, the FBI notified plaintiff that his request for a fee waiver was denied. The FBI explained plaintiff failed to demonstrate the "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." The FBI stated the information sought by plaintiff failed to show how this information would be of interest to the general public. (*See* **Exhibit D.**)

(9) By letter dated November 4, 2015, the FBI provided plaintiff a status of his request explaining it was assigned to an analyst on October 1, 2015. The FBI stated the analyst will confirm the responsiveness of each record as well as apply FOIA exemptions to the material. (*See* **Exhibit E.**)

(10) By letter dated December 3, 2014, the FBI summarized its December 3, 2014 telephone conversation with plaintiff regarding the total number of responsive pages and offered plaintiff the opportunity to limit the scope of his request. Plaintiff indicated he would like all responsive files to be processed and placed on CD. Plaintiff also agreed to pay all fees. The FBI explained it would issue monthly interim releases of 500 pages per CD. (*See* **Exhibit F.**)

(11) On January 12, 2016, plaintiff, through counsel, filed a complaint with the United States District Court for the District of Columbia. (*See* **Dkt. No. 1.**)

(12) By letter dated May 2, 2016, the FBI released to plaintiff sixty-one (61) pages of segregable material from his main file. (*See* **Exhibit G.**)

### THE FBI CENTRAL RECORDS SYSTEM

(13) The Central Records System ("CRS") is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law

enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel functions. The CRS spans the entire FBI organization and encompasses the records of FBI HQ, FBI Field Offices, and FBI Legal Attaché Offices ("Legats") worldwide.

(14) The CRS consists of a numerical sequence of files, called FBI "classifications," which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters. For identification and retrieval purposes across the FBI, when a case file is opened, it is assigned a Universal Case File Number ("UCFN") consisting of three sequential components: (a) the CRS file classification number, (b) the abbreviation of the FBI Office of Origin ("OO") initiating the file, and (c) the assigned individual case file number for that particular subject matter.[1] Within each case file, pertinent documents of interest are "serialized," or assigned a document number in the order which the document is added to the file, typically in chronological order.

## THE CRS GENERAL INDICES AND INDEXING

(15) The general indices to the CRS are the index or "key" to locating records within the enormous amount of information contained in the CRS. The CRS is indexed in a manner which meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties. The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval. The entries in the general indices fall into two category

---

[1] For example, in a fictitious file number of "11Z-HQ-56789;" the "11Z" component indicates the file classification, "HQ" indicates that FBI Headquarters is the FBI OO of the file, and "56789" is the assigned case specific file number.

types:

    (a) <u>Main entry</u>. This entry pertains to records indexed to the main subject(s) of a file, known as "main file" records. The "main" entry carries the name of an individual, organization, or other subject matter that is the designated subject of the file.

    (b) <u>Reference entry</u>. This entry, or a "cross-reference," pertains to records that merely mention or reference an individual, organization, or other subject matter that is contained in a "main" file record about a different subject matter.

(16)    FBI Special Agents ("SA") and/or designated support personnel may index information in the CRS by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.*, a terrorist attack or bank robbery). Indexing information in the CRS is based on operational necessity, and the FBI only indexes that information considered relevant and necessary for future retrieval. Accordingly, the FBI does not index every individual name or other subject matter in the general indices.

## AUTOMATED CASE SUPPORT

(17)    Automated Case Support ("ACS") is an electronic, integrated case management system that became effective for FBIHQ and all FBI Field Offices and Legats on October 1, 1995. As part of the ACS implementation process, over 105 million CRS records were converted from automated systems previously utilized by the FBI into a single, consolidated case management system accessible by all FBI offices. ACS has an operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions.[2]

(18)    The Universal Index ("UNI") is the automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information

---

[2] ACS and the next generation Sentinel system are relied upon by the FBI daily to fulfill essential functions such as conducting criminal, counterterrorism, and national security investigations; background investigations; citizenship and employment queries, and security screening, to include Presidential protection.

to FBI files for future retrieval via index searching. Individual names are recorded with applicable identifying information such as date of birth, race, sex, locality, Social Security Number, address, and/or date of an event. Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS. As such, a UNI index search in ACS is capable of locating FBI records well before its 1995 FBI-wide implementation to the present day in both paper and electronic format.[3] Currently, UNI consists of approximately 111 million searchable records and is updated daily with newly indexed material.

## ACS AND SENTINEL

(19)    Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012. Sentinel provides a web-based interface to FBI users, and it includes the same automated application that is utilized in ACS. After July 1, 2012, all FBI generated records are created electronically in case files via Sentinel; however, Sentinel did not replace ACS and its relevance as an important FBI search mechanism. Just as pertinent information was indexed into UNI for records generated in ACS before July 1, 2012, when a record is generated in Sentinel, information is indexed for future retrieval. Moreover, there is an index data sharing nexus between the Sentinel and ACS systems whereby information indexed into Sentinel is replicated or "backfilled" into ACS. In sum, the Sentinel case management system builds on ACS and shares its operational purpose; Sentinel provides another portal to locate information within the vast CRS for FBI records generated on or after July 1, 2012.

---

[3] Older CRS records that were not indexed into UNI as result of the 1995 ACS consolidation remain searchable by manual review of index cards, known as the "manual indices." A search of the manual indices is triggered for requests on individuals if the person was born on or before January 1, 1958; and for requests seeking information about organizations or events on or before January 1, 1973. Records created after these dates would be captured through a UNI search.

## ADEQUACY OF SEARCH

(20)    <u>Index Searching</u>. To locate CRS information, RIDS employs an index search methodology. Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS since the FBI indexes pertinent information into the CRS to facilitate retrieval based on operational necessity. Given the broad range of indexed material in terms of both time frame and subject matter that it can locate in FBI files, the automated UNI application of ACS is the mechanism RIDS employs to conduct CRS index searches. If a request seeks records that may have been generated on or after July 1, 2012, an overlapping search of ACS via the UNI application and a Sentinel index search are performed at the litigation stage to ensure adequacy of the CRS index search.

(21)    <u>CRS Search and Results</u>. Upon receipt of plaintiff's request, RIDS conducted a CRS index search for responsive records employing the UNI application of ACS and a Sentinel index search by using the following search term: "Foad Karim Farahi." The FBI's search included a three-way phonetic[4] breakdown of "Foad Karim Farahi." The FBI used information in plaintiff's request letter to facilitate in the identification of responsive records. As a result of this search effort, the FBI identified one main file indexed to plaintiff's name. Upon learning of this litigation, the FBI repeated the same search it conducted at the administrative stage. This new FBI search of the CRS revealed the same main file it initially identified at the administrative stage, along with multiple cross-references.[5]

---

[4] <u>Three-way phonetic search ("TP" search)</u> – the FBI used the phonetic search capabilities of ACS to conduct a TP search of plaintiff's name. This means first, the computer automatically broke his name down and searched the index for three different breakdowns of the name entered. Then, the computer breaks names down based on their phonetic characteristics. The computer will return results based on whether or not they phonetically match a certain percentage of the first and last name searched.

[5] RIDS policy at the time of receipt of plaintiff's request, was to search for and identify only "main" files responsive to most FOIPA requests at the administrative stage.

7

(22)  Scope of Search. RIDS conducted a search reasonably calculated to locate records responsive to plaintiff's request. First, given its comprehensive nature and scope, the CRS is the principal records system searched by RIDS, to locate information responsive to most FOIPA requests, because the CRS is where the FBI indexes information about individuals, organizations, events, and other subjects of investigative interest for future retrieval. Second, given plaintiff's request seeking information regarding himself, such information would reasonably be expected to be located in the CRS via the index search methodology. No other record system is reasonably likely to contain the requested records.

## PROPOSED PROCESSING SCHEDULE

(23)  In this case, the FBI identified main file(s) and cross-references records responsive to plaintiff's request the release of which could reasonably be expected to interfere with pending law enforcement proceedings. The plaintiff is currently the subject of a federal immigration removal proceeding initiated by the Department of Homeland Security ("DHS") and is also the subject of active and pending investigation(s). As a result, the FBI is categorically denying access to these records under FOIA Exemption (b)(7)(A) because the production of such records could reasonably be expected to interfere with law enforcement proceedings.[6]

(24)  Under 5 U.S.C. § 552(b)(7)(A), an agency may categorically deny access to records, if the records were compiled for law enforcement purposes and the production of such records could reasonably be expected to interfere with law enforcement proceedings. When asserting FOIA Exemption 7(A), an agency is required to search for, locate, and conduct a page-by-page review of all responsive documents. Each document must be reviewed and assigned a

---

[6] The pending investigation(s) at issue here are expected to continue for a lengthy and undetermined amount of time.

functional category[7] whereby the release will trigger one or more harms to law enforcement proceedings unless the documents can be segregated and released without triggering a (b)(7)(A) harm. In addition to asserting FOIA Exemption (b)(7)(A) and assigning a functional category to each document, an agency must also assert all underlying exemptions during the original district court proceeding unless bifurcation is requested and granted by the court.[8] The process of reviewing Exemption 7(A) material for additional underlying exemptions transforms the review process from a categorical document-by-document review, to a much lengthier page-by-page review to identify additional, underlying exemptions for assertion despite the blanket coverage of Exemption 7(A).

(25)     The FBI respectfully requests an order permitting it to move for summary judgment based on the applicability of Exemption 7(A) without waiving its ability to assert additional FOIA exemptions in the future. If the Court grants the FBI's motion, Exemption 7(A) would be litigated given its categorical applicability, and in the event Exemption 7(A) would expire during the pendency of this FOIA litigation – or if the Court rejects the FBI's withholdings under Exemption 7A – the underlying exemptions would be preserved. If the motion is granted, the FBI proposes a time period of fifteen (15) months, namely, until September 1, 2017, in which to identify documents for withholding under functional Exemption 7(A) categories as well as process and release to plaintiff any additional segregable material. The FBI identified approximately 11,000 pages of responsive material. The requested processing schedule will provide adequate time for the FBI to review and categorize each record as well as identify and release all segregable material to plaintiff. The FBI also proposes a time period of thirty (30) additional days, namely, until October 1, 2017 to prepare and file the

---

[7] *See Bevis v. Dep't of State*, 801 F2d 1386, 1388 (D.C.Cir. 1986)
[8] All underlying exemptions must be raised and asserted in the original district court proceeding. *Maydak v. U.S. Department of Justice*, F. 3d 760 (2000).

9

*Vaughn* declaration fully explaining its assertion of Exemption 7(A). The FBI will issue to plaintiff interim releases of segregable material, if located during its review, as well as status reports every eight (8) weeks beginning on August 1, 2016. Recently, the FBI issued to plaintiff a release of segregable material on May 2, 2016. The release consisted of a Letterhead Memorandum, plaintiff's FD-302 and polygraph examination results, as well as public source material such as newspaper articles. The FBI will continue to release segregable material when located during its review.

(26)     If the FBI's motion is denied, then an additional fifteen (15) months, namely, until December 1, 2018, will be needed to complete the review and processing of responsive records and to assert all applicable underlying exemptions. The FBI also proposes a time period of thirty (30) additional days, namely, until January 1, 2019, to prepare and file the *Vaughn* declaration detailing the FBI's FOIA Exemption 7(A) claim as well as explaining each underlying FOIA Exemption. Based on our experience in Exemption 7(A) cases of this nature, the additional time required to complete a page-by-page review for underlying exemptions doubles the amount of time required to complete a categorical document review under 7(A). For example, without the requested order, the records will require a classification review to identify any and all FOIA Exemption (b)(1) issues. Next, the material must undergo a page-by-page review to identify and assert all underlying FOIA Exemptions. While performing these additional reviews, the FBI will issue to plaintiff interim releases of segregable material, if located during its review, as well as a status report every eight (8) weeks beginning August 1, 2016.

(27)     In conclusion, the FBI respectfully requests bifurcation in an effort to narrow the scope of issues and obtain a ruling on the categorical denial of records under FOIA Exemption (b)(7)(A).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2016.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia