## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

FOAD FARAHI )
)
)
Plaintiff )
)    **Civil Action No. 15-2122 (RBW)**
v. )    **(ECF)**
)
FED. BUR. OF INVESTIGATION. )
)
Defendant. )
_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
### OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(c) and LCvR 7(h), the Federal Bureau of Investigation, ("Defendant" or "FBI"), by and through the undersigned counsel, respectfully submit this Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment.

### INTRODUCTION AND SUMMARY

Plaintiff commenced this action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq*. ("FOIA"), seeking records about himself.   Defendant conducted an adequate search and embarked upon a production of records over the course of a few years.   Dispositive briefing is now due and Defendant is entitled to summary judgment because it conducted an adequate search using Plaintiff's name and phonetic variations of his name.   The search returned one main file.   Because Plaintiff's records are law enforcement records and release could interfere with an ongoing investigation, Defendant correctly withheld all, except publicly available records, in their entirety under FOIA Exemption 7(A).   However, in order to avoid any *Maydak*

1

issues,[1] Defendant also invoked other appropriate FOIA exemptions such as FOIA Exemptions 1, 3, 5, and 7, in addition to FOIA Exemption 7(A).   Thus, because release of the records would be unjustified because the records implicate national security, are protected by other statutes, expose others to unwarranted invasions of personal privacy, and could reveal law enforcement techniques and procedures, Defendant is entitled to summary judgment.

## BACKGROUND

For a more fulsome rendition of the background, Defendant respectfully refers the Court to its Statement of Material Facts to which there is not genuine issue, which is attached to this memorandum and fully incorporated herein.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 248.   A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.   Once the

---

[1]        *Maydak v. DOJ*, 218 F.3d 760 (D.C. Cir. 2000) (holding that the Government generally waives any FOIA exemption it fails to raise at the initial proceedings before the district court).

moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must instead establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.   Summary judgment is thus due if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]."   *Id.*

Cases involving FOIA claims, like this one, are typically and appropriately decided on motions for summary judgment.   *See, e.g.*, *Higgins v. U.S. Dep't of Justice*, 919 F. Supp. 2d 131, 139 (D.D.C. 2013); *Wheeler v. U.S. Dep't of Justice*, 403 F. Supp. 2d 1, 5-6 (D.D.C. 2005). To prevail on summary judgment in a typical FOIA action, an agency must satisfy two elements. First, it must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."   *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).   Summary judgment may be granted in a FOIA case upon agency affidavits that are relatively detailed, non-conclusory, and made in good faith.   *See e.g., Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Brown v. FBI*, 873 F.Supp.2d 388, 398 (D.D.C. 2012); *Russell v. FBI*, Civ. A. No. 03-0611, 2004 WL 5574164, at *2 (D.D.C. Jan. 9, 2004) (*citing SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).   Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith [and] . . . can be rebutted only with evidence that the agency's search was not made in good faith." *Defenders of Wildlife v. U.S. Dep't of Interior,* 314 F.Supp.2d 1, 8 (D.D.C. 2004); *see also SafeCard*, 926 F.2d at 1200 (quoting *Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981) (agency declarations are "accorded a presumption of good faith,

which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'")).   However, "if the sufficiency of the agency's identification or retrieval procedure is genuinely in issue, summary judgment is not in order." *Weisberg*, 627 F.2d at 370.

Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption."   *Leadership Conf. on Rights v. Gonzales*, 404 F.Supp.2d 246, 252 (D.D.C. 2005).   After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party, "after deletion of the portions which are exempt." 5 U.S.C. § 552(b).   A *Vaughn* index "permit[s] adequate adversary testing of the agency's claimed right to an exemption."   *Nat'l Treasury Emps. Union ("NTEU") v. Customs*, 802 F.2d 525, 527 (D.C. Cir. 1986) (*citing Mead Data Central v. U.S. Dep't of the Air Force*, 566, F.2d 242, 251 (D.C. Cir. 1977), and *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).   Thus, the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record."   *NTEU*, 802 F.2d at 527 n.9. "The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice."   *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) (*citing Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec.*, 475 U.S. at 586.   Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.   *Celotex Corp.*, 477 U.S. at 322-23.   Here, the Defendant respectfully submits the Hardy Decl. along with associated attachments in support of its motion for summary judgment.

4

## ARGUMENT

### I.   DEFENDANT'S SEARCH IS ADEQUATE

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents."   *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (citing *John Doe Agency v. John Doe Corp*., 493 U.S. 146, 151 (1989)); *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998).   Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"   *Id*. (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).   Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search.   *See Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 91 (D. D.C. 2009).   An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68; *see also Defs. of Wildlife*, 623 F.Supp.2d at 92 (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific

enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment.   *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980). Moreover, conclusory assertions about the agency's thoroughness are insufficient.   *Morley v. Cent. Intelligence Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007); *Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 849 F.Supp.2d 6, 11 (D. D.C. 2012) ("The affidavit must explain the scope and method of the agency's search in a non-conclusory fashion.").

Nevertheless, "[a]gency affidavits are accorded a presumption of good faith," *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 1200 (D.C. Cir. 1991), which can be rebutted with "evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981), or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests.   *Valencia-Lucena*, 180 F.3d at 326 (citing *Founding Church of Scientology, Inc. v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1981); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1981) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

Here, the Hardy Decl. more that adequately sets forth the evolution of Defendant records management systems and their related indices beginning with CRS and its search indices and culminating with Sentinel, which is was installed in 2018 and Defendant's current primary records management system.   *See* Hardy at 14-18, ¶¶ 44-51.   The entries in the general indices of these records management systems are either main index entries, created for each individual or non-individual that is the subject or focus of an investigation with the main subject(s) identified in the case title of most documents in a file and reference index entries, created for

individuals or non-individuals associated with the case but are not the main subject(s) or focus of

an investigation and typically not identified in the case title file.   *Id*.   "Sentinel retains the

index search methodology and function whereby the CRS is queried via Sentinel for pertinent

indexed main or reference entries in case files" and "all CRS index data from the UNI

application previously searched via ACS is now searched through the "ACS Search" function

within Sentinel."   *Id*. at 17, ¶ 49.

Against this backdrop, Defendant "predominately begins its FOIPA searching efforts by

conducting index searches via the "ACS Search" function in Sentinel" and "then builds on its

ACS index search by conducting an index search of Sentinel records to ensure it captures all

relevant data indexed after the implementation of Sentinel."   Hardy Decl. at 17, ¶ 50.   "The

CRS automated indices, available within Sentinel and the ACS search function in Sentinel, in

most cases represent the most reasonable means for the FBI to locate records potentially

responsive to FOIPA requests . . . because these automated indices offer access to a

comprehensive, agency-wide set of indexed data on a wide variety of investigative and

administrative subjects."   *Id*.   After searching, a FOIPA analyst considers potentially

responsive indexed records against the specific parameters of individual requests and makes

responsiveness determinations once indexed records are gathered, analyzed, and sorted by

FOIPA analysts who then make informed scoping decisions to determine the total pool of

records responsive to an individual request.   *Id*. at 17-18, ¶ 51.

In this specific case, "[u]pon receipt of Plaintiff's request, [Defendant] conducted a CRS

index search for responsive records employing the UNI application of ACS and a Sentinel index

search by using the following search term: 'Foad Karim Farahi.'"   Hardy Decl. at 18-19, ¶¶ 54-

55.   "The FBI's search included a three-way phonetic breakdown of 'Foad Karim Farahi[]'"
and Defendant used information in Plaintiff's request letter to facilitate in the identification of
responsive records.[2]  *Id*.   As a result of this search effort, the FBI identified one main file
indexed to plaintiff's name.   *Id*.   Thus, "because the CRS is where the FBI indexes information
about individuals, organizations, events, and other subjects of investigative interest" and Plaintiff
sought records about himself, such information would reasonably be expected to be located in
the CRS via the index search methodology.   *Id*.   No other record system is reasonably likely to
contain the requested records.   *Id*.

"The touchstone when evaluating the adequacy of an agency's search for records in
response to a FOIA request is reasonableness, and in particular, whether the agency made 'a
good faith effort to conduct a search for the requested records, using methods which can be
reasonably expected to produce the information requested.'"   *Muckrock, LLC v. CIA*, 300
F.Supp.3d 108, 125 (D. D.C. 2018) (quoting *Oglesby v. Dep't of Army*, 920 F.2d at 68); *see also
Physicians for Human Rights v. DOD*, 675 F.Supp.2d 149, 164 (D. D.C. 2009) (noting that "as
long as this standard is met a court need not quibble over every perceived inadequacy in an
agency's response, however slight").   Defendant's declaration, which is accorded the
presumption of good faith, sets forth that, not only did Defendant search the right records
management systems, it also did so in a manner reasonably calculated to retrieve Plaintiff's
records and it did so.   *Matthews v. FBI*, 2019 U.S. Dist. Lexis 54808 * 11 (D. D.C. 2019)
("Given that Matthews requested records about himself, the Court concludes that the FBIs search

---

[2]       Three-way phonetic search ("TP" search) enables the computer automatically
brake Plaintiff's name down and search the index for three different breakdowns of the name
entered.   Hardy Decl. at 19, n8.

of its CRS, using three variations of [his] name, is reasonably calibrated to locate all responsive

records); *Willis v. FBI*, 2019 U.S. Dist. Lexis *18 (D. D.C. 2019) (concluding that FBI's

searches of its records systems using variations of Willis's name and identifying information

about her were reasonably calculated to locate any information responsive to her four requests

and granting the FBI's motion for summary judgment on search adequacy).   Thus, for the

foregoing reasons, here also, Defendant is entitled to summary judgment.

## II.   JUSTIFICATION FOR WITHHOLDINGS UNDER FOIA EXEMPTIONS

Defendant withheld the responsive records in this case pursuant to FOIA Exemption 7(A)

and also identified and applied underlying FOIA exemptions to the documents withheld in their

entireties under FOIA Exemption 7(A) invoking FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and

7(E).   Hardy Decl. at 20, ¶¶ 57-58.   The justifications for protecting responsive investigative

records pursuant to Exemption 7(A) are supported by the operational *in camera*, *ex parte*

declaration of a now-retired FBI SA and confirmed still active and ongoing by an FBI

Supervisory Special Agent ("SSA").   *Id.*[3]

### a.   Defendant Properly Withheld Records under FOIA Exemption 7(A)

FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless

information is exempted under clearly delineated statutory language."   *John Doe Agency v. John

Doe Corp.*, 493 U.S. 146, 152 (1989); *Ctr. For Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925

(D.C. Cir. 2003) (FOIA "represents a balance struck by Congress between the public's right to

---

[3]      Along with this filing today, Defendant is also filing a Motion for Leave to File
the referenced declarations *ex parte in camera* and under seal.   Defendant also relies on a
previous *ex parte in camera* declaration submitted to and accepted by the Court.   *See* ECF No.
24.

know and the government's legitimate interest in keeping certain information confidential."). While the FOIA requires agency disclosure under certain circumstances, it also recognizes "that public disclosure is not always in the public interest." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). It is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2416, 2423); *see also American Civil Liberties Union v. DOJ*, 265 F.Supp.2d 20, 27 (D. D.C. 2003) ("it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole").

To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions, *see* 5 U.S.C. § 552(b). "A district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," i.e., records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996) (emphasis by the court); *see also* 5 U.S.C. § 552(a)(4)(B) (providing jurisdiction only to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld. . . ."); *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'"). The exemptions are grounded in Congress' recognition "that legitimate governmental and private

interests could be harmed by release of certain types of information." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).   Despite the "liberal congressional purpose" of FOIA, the statutory exemptions must be given "meaningful reach and application." *John Doe*, 493 U.S. at 152. "Requiring an agency to disclose exempt information is not authorized. . . ." *Minier*, 88 F.3d at 803 (quoting *Spurlock v. FBI*, 69 F.3d 1010, 1016 (9th Cir. 1995)).

FOIA Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings."   "In assessing whether records are compiled for law enforcement purposes… the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (quoting *Aspin v. DOD*, 491 F.2d 24, 27 (D.C. Cir. 1973)).   To demonstrate that the records were compiled for law enforcement purposes, an agency "must establish: (1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'"   *Id.* (quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

Defendant is "the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States."   Hardy Decl. at 21, ¶ 60.   "Under these investigative authorities, the FBI

generated the responsive records in furtherance of investigations of violations of national security and international terrorism to include pending law enforcement proceedings and the subject's association with individuals directly involved in such violations." *Id*.  Defendant applied FOIA Exemption 7(A) "to protect the main file and cross-reference documents responsive to Plaintiff's FOIA request concerning himself." *Id*. at 22, ¶ 63.  These are law enforcement records compiled during national security investigations involving Foad Farahi and/or others and are from and/or pertain to pending or prospective investigations or prosecutions.  *Id*.; *see also* Declaration of David M. Hardy, submitted *ex parte, in camera*. ("Hardy *Ex Parte in Camera* Decl.").  Specifically, these records run the gamut, Hardy Decl. at 23-26, ¶ 65a-65t, including *inter alia*, FD-1057s, which are electronic communications used within the FBI, *id*. at 23, ¶ 65(a); FD-302s, which "are internal FBI forms in which evidence is often documented [] as a result of FBI interviews", *id*., ¶ 65(c); letterhead and memoranda that "provide[] investigative updates, *id*., ¶ 65(b); internal electronic mail messages, *id*. at ¶65(i); sealed court documents, *id*., ¶ 65(p).  *See also id*. at 29-33, ¶ 70.

Thus, "[b]ecause the DOJ is an agency 'specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926; *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (This inquiry requires "less exacting proof of a legitimate law enforcement purpose" when the record belongs to "law enforcement agencies such as the FBI."); *accord Summers v. DOJ*, 517 F.Supp.2d 231, 242-43 (D.D.C. 2007); *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (recognizing that the Exemption 7(A) threshold is satisfied by an investigation concerning "a heinous violation of federal law as well as a breach of this nation's security").  Because the records at issue were compiled as part of a Department of

Justice investigation into possible violations of federal law, they were "compiled for law enforcement purposes," and the threshold inquiry under Exemption 7(A) is satisfied.

Regarding the interference prong of FOIA Exemption 7(A), "[m]aterial responsive to Plaintiff's request is located in files of ongoing investigations[] and [r]elease of any information, other than public source information from these files, could reasonably be expected to interfere with these pending criminal law enforcement proceedings, as well as potential enforcement proceedings such as spin-off investigations and/or prosecutions that may result from the investigations." Hardy Decl. at 27, ¶ 66. In addition, "[t]he *In Camera, Ex Parte* Declaration of Miami FBI SA, provides further detailed information about the enforcement proceedings. *See* Hardy *Ex Parte in Camera* Decl.

"The ongoing investigations are related to Farahi and others, and release of the requested information would allow such individuals to critically analyze documents concerning these international terrorism investigations." Hardy Decl. at 28, ¶ 68. These individuals could therefore use the released information to their advantage to alter, destroy, create false evidence, intimidate potential witnesses, adjust patterns of behavior to avoid detection and/or mislead investigations." *Id*. The "likelihood of witness intimidation and evidence tampering" has been held to be sufficient concerns under Exemption 7(A). *See, e.g., Ctr. for Nat'l Sec. Studies*, 331 F.3d at 929; *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988) (agreeing that disclosure might identify individuals who had assisted investigation by providing documents, and would "thereby subject them to potential reprisals and deter them from providing further information"); *Edmonds v. FBI*, 272 F.Supp.2d 35, 55 (D. D.C. 2003) (recognizing potential harms that would result if disclosure "stifle[d] cooperation" or "le[d] to the harassment or

intimidation of individuals involved in the investigations"); *Kay v. FCC*, 976 F.Supp. 23, 39 (D. D.C. 1997) (recognizing that an agency "need not establish that witness intimidation is certain to occur, only that it is a possibility"); *Crowell & Moring v. DOD*, 703 F.Supp. 1004, 1011 (D. D.C. 1989) (agreeing that disclosing witnesses' identities would impair the Government's ability to obtain cooperation during an investigation).

Defendant need not demonstrate how the release of the withheld documents would interfere with law enforcement proceedings on a document-by-document basis.   Rather, Defendant may "group documents into relevant categories that are sufficiently distinct to allow a court to grasp how each . . . category of documents, if disclosed, would interfere with the investigation."   *American Civil Liberties Union, et al., v. FBI, et al*., 429 F.Supp. 2d 179, 190 (D. D.C. 2006) (citing *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986)).   The categories relied upon, however, must be "functional" – "allowing the court to trace a rational link between the nature of the document and the alleged likely interference."   *Id*.   In order to utilize this categorical approach, Defendant may "conduct a document-by-document review" of all responsive documents to assign documents to the proper category and "explain to the court how the release of each category would interfere with enforcement proceedings."   *Id*.   Given that Defendant's investigations concerns matters of national security, its declarations must be "viewed in light of the appropriate deference to the executive on issues of national security." *Ctr. for Nat'l. Sec. Studies*, 331 F.3d at 926-27 ("[B]oth the Supreme Court and [the D.C. Circuit] have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security.").

As set forth above, Defendant has reviewed the responsive documents, and identified

investigative categories, such that the court may "trace a rational link between the nature of the

document and the alleged likely interference."   *Crooker v. Bureau of Alcohol, Tobacco &

Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).   The FBI has provided sufficient detail to meet their

burden under Exemption 7(A).   *See, e.g., Edmonds v. FBI*, 272 F.Supp.2d 35, 54-55 (D. D.C.

2003) (upholding agency's declaration that grouped withheld material into two categories,

"evidentiary" and "investigative" materials); *see also* Hardy Decl. at 22-34, ¶¶ 62-70.

Noteworthy also, is that some of the referral agencies had invoked FOIA Exemption 7(A) along

side the FBI where they have equities.   *See* Hardy Decl., Exhibit II, Declaration of Debra S.

Middleton at 3, ¶ 8 (The criminal investigation service of the IRS has concurred that release of

the information would interfere with ongoing investigations).   Accordingly, the categorical

withholdings of records Plaintiff sought were proper under FOIA Exemption 7(A).

### b.      Records Withheld Under FOIA Exemption 6 and 7(C)

Defendant invoked FOIA Exemptions 6 and 7(C) to protect names and identifying

information on their employees and professional staff, third parties, local law enforcement,

victims, personnel, etc.   *See* Hardy Decl., at 46-54, ¶¶94-106.   Exemption 6 shields information

about individuals in "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   For this

exemption to apply, the information at issue must be maintained in a government file and

"appl[y] to a particular individual."   *Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602 (1982).

Once this threshold is met, Exemption 6 requires the agency to balance the individual's right to

privacy against the public interest in disclosure.   *See Dep't of Air Force v. Rose*, 425 U.S. 352,

372 (1976); *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).   "[T]he privacy inquiry of

Exemptions 6 and 7(C) [is] essentially the same," although Exemption 7(C) sets a lower invasion

threshold to justify withholding.   *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1125 (D.C. Cir.

2004).[4]   Thus, Exemption 7(C) embodies heightened privacy protections.   *See DOJ v.*

*Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989); *NARA v. Favish*, 541 U.S.

157, 165-66 (2004).   In light of the related nature of the inquiries under Exemptions 6 and 7(C),

the Defendant mostly applied the exemptions here jointly and defends them as such.

Exemption 7(C) protects law enforcement records or information when disclosure "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."   5 U.S.C. §

552(b)(7)(C).   The Supreme Court has adopted a broad construction of the privacy interests

protected by Exemptions 6 and 7(C).   *See Reporters Comm.*, 489 U.S. at 763.   Privacy is of

particular importance in the FOIA context because disclosure under FOIA is tantamount to

disclosure to the public at large.   *See Painting & Drywall Work Preservation Fund, Inc. v.*

*HUD*, 936 F.2d 1300, 1302 (D.C. Cir. 1991).   By contrast, the courts have narrowly construed

the public interest in disclosure of information.   The "only relevant 'public interest in

disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core

purpose of the FOIA,' which is contribut[ing] significantly to public understanding of the

operations or activities of the government.'"   *Dep't of Defense v. FLRA*, 510 U.S. 487, 495

(1994) (quoting Reporters Comm., 489 U.S. at 775).   Plaintiff bears the burden of demonstrating

that the release of the withheld information would serve this interest.   *See Carter v. Dep't of*

*Commerce*, 830 F.2d 388, 391-92 & nn.8 & 13 (D.C. Cir. 1987).

---

[4]        *See* Hardy Decl. at 47, n16.

In this case, Defendant correctly calibrated the balance between privacy and any competing public interests.   Hardy Decl. at 47-53, ¶¶ 97-103.   Specifically, regarding its staff, for example, it sought to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, conducting searches and making arrests and it is possible for an individual targeted by such law enforcement actions to carry a grudge which may last for years.   *Id*. at 47, ¶ 97.   Thus, SAs maintain substantial privacy interests in information about them in criminal investigative files and there is no public interest to be served by disclosing the identities of the SAs to the public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities.   *Id*.   Defendant has also sought to protect third parties and other non-FBI law enforcement for essentially the same reasons.   *Id*. 47-53, ¶¶ 97-103.   Referral agencies like NCIS took similar position to protect their personnel.   *See* Hardy Declaration, Exhibit JJ, Declaration of Karen Richman at ¶ 7; *see also id*., Exhibit KK, Declaration of Michael Heaton at 8, ¶¶ 19-21 (invoking FOIA Exemption 6 to protect names of its intelligence analysts).

It is well-settled that each of these categories of information has been properly protected under both exemptions.   Courts have consistently found that individuals represented in each category protected by the FBI have substantial privacy interests, and when, as here, plaintiffs have failed to establish an overriding public interest in disclosure of such individuals' identities, courts have without difficulty protected their identities from public disclosure because "the mention of individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."   *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990); *see also Lesar v. DOJ*, 636 F.2d 472, 488 (D.C. Cir. 1980); *Davis v. DOJ*, 968 F.2d 1276, 1281

17

(D.C. Cir. 1992); *Fischer v. DOJ*, 596 F.Supp.2d 34, 47 (D. D.C. 2009); *Keys v. DHS*, 510

F.Supp.2d 121, 128 (D. D.C. 2007); *Ray v. FBI*, 441 F. Supp.2d 27, 34-35 (D. D.C. 2006);

*Truesdale v. DOJ*, 2005 WL 3294004, at *6 (D. D.C. Dec. 5, 2005); *Nation Magazine v. United

States Customs Serv*., 71 F.3d 885, 896 (D.C. Cir. 1995) (explaining that "subjects, witnesses, or

informants in law enforcement investigations" are protected under 7(C) (citing *SafeCard

Services, Inc*., 926 F.2d at 1197)); *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003) (This

Circuit has consistently held that where a FOIA request for law enforcement records invokes the

privacy interests of any third party mentioned in those records (including investigators, suspects,

witnesses and informants) the exemption applies, unless there is an overriding public interest in

disclosure).   Consequently, because the individuals' whose identities FBI protected have

recognized privacy interests and because plaintiff has not shown an overriding public interest in

release of this information or submitted privacy waivers, Defendant is entitled to summary

judgment on its Exemptions 6 and 7(C) withholdings.

### c.      Records Withheld Under FOIA Exemption 7(D)

Exemption 7(D) allows an agency to withhold information or documents if the law

enforcement records "could reasonably be expected to disclose the identity of a confidential

source . . . wh[o] furnished information on a confidential basis" or that would reveal

"information furnished by a confidential source."   5 U.S.C. § 552(b)(7)(D).   "A source is

confidential within the meaning of exemption 7(D) if the source provided information under an

express assurance of confidentiality or in circumstances from which such an assurance could be

reasonably inferred."   *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995).   However, "it is

not enough for the [agency] to claim that all sources providing information in the course of a

criminal investigation do so on a confidential basis."   *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C.

Cir. 2011).   "If the FBI's production of criminal investigative records could reasonably be

expected to disclose the identity of such a confidential source or information furnished by such a

source, that ends the matter, and the FBI is entitled to withhold the records under Exemption

7(D)."   *Roth*, 642 F.3d at 1184–85; *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575-76 (D.C. Cir.

1990) (Exemption 7(D) requires no balancing of public and private interests); *see also Jones v.

FBI*, 41 F.3d 238, 247 (6th Cir. 1994) (observing that "if the source was confidential, the

exemption may be claimed regardless of the public interest in disclosure"); *Nadler v. DOJ*, 955

F.2d 1479, 1487 n. 8 (11th Cir. 1992) (holding that if a source is confidential, "Exemption 7(D)

does not require the Government to justify its decision to withhold information against the

competing claim that the public interest weighs in favor of disclosure").

The government may establish implied assurances of confidentiality by describing

"generic circumstances in which an implied assurance of confidentiality fairly can be inferred."

*DOJ v. Landano*, 508 U.S. 165, 179 (1993).   In *Landano*, the Supreme Court stressed two

factors to consider in assessing whether confidentiality can be inferred: the nature of the crime

and the source's relation to it.   *Id.* at 179; *Roth*, 642 F.3d at 1184 (citing *Landano*, 508 U.S. at

179) (These factors include "the character of the crime at issue, the source's relation to the crime,

whether the source received payment, and whether the source has an ongoing relationship with

the law enforcement agency and typically communicates with the agency only at locations and

under conditions which assure the contact will not be noticed.").   However, once an agency

establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.

In order to do so, the plaintiff must come forward with "'absolutely solid evidence showing that

the source . . . in a law enforcement investigation has manifested complete disregard for confidentiality.'" *Parker v. Dep't of Justice*, 934 F.2d 375, 378 (D.C. Cir. 1991) (quoting *Dow Jones & Co.*, 908 F.2d at 1011).

Whether the information is provided under an express of implied agreement, FBI sources are considered to be confidential because they furnish information only with the understanding that their identities and the information they provide will not be divulged outside the FBI. Hardy Decl. at 53, ¶ 105.   "The FBI has learned through experience [that] sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal.   *Id*.   Only when protected from reprisal will [confidential sources] furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will later be made public."   *Id*. In addition, some "individuals, who provided specific and detailed information that is singular in nature, specifically requested that their identities not be revealed due to fear of reprisal" and Defendant "expressly promised these third-parties that their identities and the information they provided would not be disclosed."   *Id*. at 56, ¶ 111.   Defendant also withheld confidential source symbol numbers related to "activities of investigative interest in the investigative files response to Plaintiff's FOIA request."   *Id*. at 57, ¶ 112.

Defendant also "protected the names, identifying information about, and information provided by third parties under circumstances in which confidentiality can be inferred" because "these third parties provided information concerning the activities of subjects who were of investigative interest to the FBI or other law enforcement agencies."   Hardy Decl. at 59-60, ¶ 116.   These "individuals provided information to the FBI only because they believed their

cooperation with, and the information they provided, would remain confidential . . . to include[] the identities of and information provided by individuals in a position to have ready access to and/or knowledge about targets and others involved in extremist activities, including the arsons under investigation by the FBI." *Id*.   Such access exposed them to potential significant harms should their association and cooperation with the FBI be publicly disclosed. *Id*.   Thus, Defendant "concluded that it is reasonable to infer that these individuals did not believe that their identities would be publicly disclosed by the FBI." *Id*.

"[O]nce the agency receives information from a 'confidential source during the course of a legitimate criminal investigation . . . all such information obtained from the confidential source receives protection.'" *Lesar*, 636 F.2d at 492.   If the informant is deemed confidential, Exemption 7(D) then protects all information provided by that informant. *See Simon v. DOJ*, 752 F.Supp. 14, 21 (D. D.C. 1991), *aff'd*, 980 F.2d 782 (D.C. Cir. 1992).   Defendant protected confidential source information under both express and implied scenarios as well as to protect confidential file numbers/symbols, and foreign agency cooperation. *Id*. at 54-62.   Under "these circumstances it is reasonable to conclude that sources provided information incorporated into these Reports of Investigation with the expectation that his or her identity would be remain confidential." *Lewis-Bey v. DOJ*, 595 F.Supp.2d 120, 137 (D. D.C. 2009) ("ATF properly withholds under Exemption 7(D) the portions of the Reports the disclosure of which could reasonably be expected to disclose the identity of a confidential source."); *Miller v. DOJ*, 562 F.Supp.2d 82, 124 (D. D.C. 2008) ("DEA's decision to withhold information from or about a confidential source in these circumstances [a Report of Investigation] is proper.").

The same is true of confidential source symbol numbers.   Disclosure of information

about investigations "under express grants of confidentiality," including the permanent source symbols of informants "could reasonably be expected to disclose the identity of a confidential source." *Pinson v. DOJ*, 245 F.Supp.3d 225, 252-53 (D. D.C. 2017); *Amuso v. DOJ*, 600 F.Supp.2d 78, 99 (D. D.C. 2009) (informants assigned a source code operate under an express grant of confidentiality and so are protected by Exemption 7(D)); *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp.3d 136, 143 (D. D.C. 2018) (Given this express grant of confidentiality, the FBI's withholding of the source's "name, social security number, phone number, file number, source number, and [ ] type of source expenditures" under Exemption 7(D) was proper).   "If the FBI disclosed the confidential source symbol numbers of these informants, their identities could be ascertained by persons knowledgeable of the FBI investigations at issue in this case."   Hardy Decl. at 63, ¶ 130.   Likewise, the FBI's assertion of FOIA Exemption 7(D) to protect foreign government agency information, *id*. at 60-61, ¶¶ 127-28, was proper because the identities of state, local and foreign law enforcement agencies are protected under Exemption 7(D)). *Founding Church of Scientology of Wash., D.C., Inc. v. Levi*, 579 F.Supp. 1060, 1063 (D. D.C. 1982), *aff'd*, 721 F.2d 828 (D.C. Cir. 1983).   Thus, because there is no genuine factual dispute and both the FBI and ATF properly asserted FOIA Exemption 7(D), summary judgment is warranted.

### d.    Records Withheld Under FOIA Exemption 7(E)

Defendant has withheld 14 categories of records under FOIA Exemption 7(E).   Hardy Decl. at 62-73, 120-139.   The FBI used FOIA Exemptions 7(E) to withhold sensitive file numbers or subfile names, identity and/or location of FBI squads, dates/types of investigations, undercover operations, Pen Register and tracing devices, etc.   *See generally id.*   Exemption

7(E) protects law enforcement records or information when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E); *see also Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) ("the importance of deterrence explains why the exemption is written in broad and general terms" and further explains why the exemption looks "not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk").

The D.C. Circuit has "set[] a relatively low bar for the agency to justify withholding" under FOIA Exemption 7(E).   *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).   Such information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk."   *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).   Moreover, "[t]he first clause of Exemption 7(E) affords 'categorical' protection for 'techniques and procedures' used in law enforcement investigations or prosecutions," *McRae v. DOJ*, 869 F.Supp.2d 151, 168 (D. D.C. 2012) (citing *Pub. Emps. for Envtl. Responsibility v. U.S. Section Int'l Boundary & Water Commn* ("*PEER*"), 839 F.Supp.2d 304, 327 (D. D.C. 2012)); whereas the second clause "separately protects 'guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law.'"   *Id.*[5]   Furthermore,

---

[5]     Some courts have held that circumvention of the law is only required for

23

"[t]he government must show that the records contain law-enforcement techniques and procedures that are generally unknown to the public."   *Elkins v. Fed. Aviation Admin*., 134 F.Supp.3d 1, 4 (D. D.C. 2015) (quoting *Am. Immigration Council v. Dep't of Homeland Sec*., 950 F.Supp.2d 221, 245 (D. D.C. 2013)).

Generally, the FBI asserted FOIA Exemption (7)(E) to protect non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement and intelligence gathering missions, and also to non-public details about techniques and procedures that are otherwise known to the public.   Hardy Decl., at 62-63, ¶ 120-122.   Specifically, with regard to Sensitive File Numbers and Subfile Names, Defendant asserted Exemption (7)(E) to protect sensitive case file numbers because the release of file numbering convention identifies its investigative priorities and, applying a mosaic analysis, suspects could change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities.   *Id*. at 63, ¶ 122.   Release of sensitive file numbers and subfile names would provide criminals with a means of judging where the FBI allocates its limited investigative resources and to structure their behavior to avoid detection and disruption by FBI investigators, enabling them to circumvent the

---

guidelines for investigations, making techniques and procedures categorically exempt under 7(E). *See, e.g., McRae v. DOJ*, 869 F.Supp.2d 151, 168-69 (D. D.C. 2012).   Other courts have held that a showing of risk of circumvention of the law is required for both types of records. *See, e.g., Muslim Advocates v. DOJ*, 833 F.Supp.2d 106, 108-09 (D. D.C. 2012).   The D.C. Circuit has not resolved this discrepancy.   *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 746 F.3d 1082, 1102 (D.C. Cir. 2014).   Even if a showing that "disclosure could reasonably be expected to risk circumvention of the law" were required to protect these "techniques and procedures" from disclosure, the "risk circumvention of the law" requirement presents a "low bar."   *See PEER*, 740 F.3d at 204 n.4 (saying that "it is not clear" that the issue of whether an agency needs to show that disclosure of a technique or procedure could reasonably be expected to risk circumvention of the law "matters much in practice" given the "low bar" for the circumvention requirement).

law.   Accordingly, the FBI properly asserted FOIA Exemption (b)(7)(E) to protect this type of information.   *Id.*   The same justification applies to the withholding of monetary funding for investigative techniques.   *Id.* at 65-66, ¶ 136.

Defendant asserted Exemption (b)(7)(E) to protect methods and techniques involving the location and identity of FBI units and/or joint units, squads and/or divisions that were involved in the investigations at issue in this case and are usually found in the administrative headings of internal FBI documents.   Hardy Decl. at 66-68.   If the locations are clustered in a particular area, it would allow hostile analysts to determine where geographically the FBI is focusing its investigative resources, and allow them to relocate their criminal activities elsewhere, disrupting the FBI's investigative process and deprive the FBI of valuable information.   *Id.*   The FBI also asserted Exemption (7)(E) to protect information pertaining to the types and dates of investigations.   *Id.*   Specifically, the information withheld reveals whether it is a "preliminary" or "full" investigation and the date it was initiated.   *Id.* at 65, ¶ 126.   Disclosure of this information could reasonably be expected to impede the FBI's effectiveness and potentially aid in circumvention of the law.   Accordingly, the FBI properly asserted FOIA Exemption (b)(7)(E) to protect this type of information.   *Id.*; *see also id.* at 66-75, ¶¶ 139-147.

Additionally, most of the FBI's protection of information here relies on application of the mosaic theory.   A mosaic of information forms when "[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted into a place to reveal with startling clarity how the unseen whole must operate."   *Halkin v. Helms*, 598 F.2d 1, 8 (D.C. Cir. 1978). The theory recognizes the importance of protecting "[w]hat may seem trivial to the uninformed [but what] may appear of great moment to one who has a broad view of the scene and may put

the questioned item of information in its proper context."   *CIA v. Sims*, 471 U.S. 159, 178

(1985). Courts have applied the mosaic theory in FOIA cases, primarily in analyzing Exemption

1 and Exemption 3 claims in the national security context.   *See, e.g., id.* ("bits and pieces" of

information "'may aid in piecing together bits of other information even when the individual

piece is not of obvious importance in itself.'") (quoting *Halperin v. CIA*, 629 F.2d 144, 150

(D.C. Cir. 1980); *Edmonds v. DOJ*, 405 F. Supp.2d 23 (D. D.C. 2005).   However, courts have

recognized that the theory can be applied to protect information under other FOIA exemptions.

*See, e.g., Ctr. for Nat'l Sec. Studies*, 331 F.3d at 929 (applying theory in Exemption 7(A) case);

*Rosenberg v. DHS-ICE*, 13 F.Supp.3d 92, 107 (D. D.C. 2014) (upholding Exemption 7(C)

withholdings where pieces of information could be pieced together to identify third parties);

*Lewis-Bey v. DOJ*, 595 F.Supp.2d 120, 137 (D. D.C. 2009) (concluding that the defendant

properly redacted "confidential source codes[,] . . . dates and other identifying information" in

order "to create a mosaic of protection" under Exemption 7(D)).

   Here, this information properly was withheld to prevent the disclosure of FBI techniques

and procedures and to prevent the dissemination of information that might be gleaned from those

techniques and procedures.   *Poitras*, 303 F.Supp.3d at 159 (the FBI's withholdings of eight

categories of information under Exemption 7(E) were proper because the "Hardy Declaration

demonstrates logically how the release of the requested information might create a risk of

circumvention of the law and describes the harms attendant to the disclosure of each category of

withheld information) (relying on *Ctr. for Nat'l Sec. Studies's* mosaic conclusions); *Shapiro v.

DOJ*, 239 F.Supp.3d 100, 111-116 (D. D.C. 2017) (granting summary judgment on the FBI's use

of FOIA Exemption 7(E) to protect search slips that are part of a complex mosaic relating to on-

going FBI investigations into domestic terrorism priorities that are the subject of a staggering

number of FOIA requests seeking information about many specific individuals and organizations

submitted by the Plaintiff in this case).   Even outside of a mosaic analysis, FBI properly

protected non-public details about its use of these technique and is entitled to summary judgment

on these claims.   *See Brown v. FBI*, 873 F.Supp.2d 388, 407-08 (D.D.C. 2012) (protecting

details about particular undercover operations); *Kortlander v. BLM*, 816 F.Supp.2d

1001, 1014 (D. Mt. 2011) (same); *Foster v. DOJ*, 933 F.Supp. 687, 693 (E.D. Mich. 1996)

(same).   Accordingly, in light of the foregoing, summary judgment is appropriate here also.

### e.      Defendant Properly Withheld Records under FOIA Exemption 1

Exemption 1 permits agencies to withhold records that are "(A) specifically authorized

under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy and (B) are in fact properly classified pursuant to such Executive

order."   5 U.S.C. § 552(b)(1).   Exemption 1 "cover[s] not only the content of protected

government records but also the fact of their existence or nonexistence."   *Larson v. Dep't of

State*, 565 F.3d 857, 861 (D.C. Cir. 2009).   The D.C. Circuit has "consistently deferred to

executive affidavits predicting harm to the national security, and [has] found it unwise to

undertake searching judicial review."   *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927.   "The

[agency's] arguments need only be both 'plausible' and 'logical' to justify the invocation of a

FOIA exemption in the national security context."   *ACLU v. DOD*, 628 F.3d 612, 624 (D.C. Cir.

2011); *see also Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ("[T]he text of Exemption 1 itself

suggests that little proof or explanation is required beyond a plausible assertion that information

is properly classified.").   Given the "unique insights" agencies have into what adverse effects

27

the disclosure of sensitive material may have, *McGehee v. Casey*, 718 F.2d 1137, 1148 (D.C. Cir. 1983), agency declarations asserting Exemption 1 classification are accorded substantial weight.   *Krikorian v. Dep't of State*, 984 F.2d 461, 464, (D.C. Cir. 1993).

A district court nonetheless must mind "that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm rather than an actual past harm."   *Halperin v. CIA*, 629 F.2d 144, 149 (D.C. Cir. 1980).   "[T]o require an actual showing that particular disclosures of" classified information would cause "identifiable concrete harm" would "overstep[] by a large measure the proper role of a court in a national security FOIA case."   *Id.*   When determining whether information was properly withheld under Exemption 1, the "only question [for the Court] is whether the disputed document is properly classified under the applicable Executive Order"—in this case Executive Order 13,526.   *Ctr. for Int'l Envtl. Law v. Office of Trade Representative*, 718 F.3d 899, 902-04 (D.C. Cir. 2013).   Here, the classification authority determined that the information withheld pursuant to Exemption (b)(1) satisfied the requirements of Executive Order 13,526 in that it is under the control of the United States Government, is classified and requires a classification marking at the "Secret" level since the authorized disclosure of the information reasonably could be expected to cause serious damage to national security.   Hardy Decl. at 38, ¶ 77 (citing E.O. 13526 § 1.2(a)(2)).

In Part II, the classification authority "personally and independently examined the FBI information withheld pursuant to Exemption 1," determined that the disclosure of this information could reasonably be expected to cause serious damage to the national security, designated that information as classified in the interest of national security at the "Secret" level,

28

and invoked FOIA Exemption (b)(1) to prevent disclosure.   Hardy Decl. at 38-39, ¶¶ 77-81.

According to the Declarant, the "classified information protected in the material responsive to

Plaintiff's request contains detailed intelligence activity information gathered or compiled by the

FBI about a specific individual or organization of national security interest."   Hardy Decl. at 40,

¶ 82.   The disclosure of this information could reasonably be expected to cause serious damage

to the national security, as it would: (a) reveal the actual intelligence activity or method utilized

by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the

method; and (c) provide an assessment of the intelligence source penetration of a specific target

during a specific period of time."   *Id*.   With the aid of this detailed information, hostile entities

could develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-

gathering capabilities.   *Id*.   This severe disruption would also result in severe damage to the

FBI's efforts to detect and apprehend violators of national security and criminal laws of the

United States.   *Id*.   Accordingly, it is exempt from disclosure pursuant to FOIA Exemption 1.

The foregoing suffices for summary judgment purposes in this Circuit.   "We never

required repetitive, detailed explanations for each piece of [EO 13526] withheld information."

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006); *Elec. Frontier Found. v. DOJ*,

892 F.Supp.2d 99 (D. D.C. 2012) ("The Hardy declaration makes clear that, in accordance with

E.O. 13526, all withheld information . . . warrant[s] classification at the '[Secret]' level in the

interest of national security."); *Nat'l Sec. Counselors v. CIA*, 960 F.Supp. 2d 101, 166 (D. D.C.

2013) ("Although many details . . . remain unknown, the declaration plausibly establishes that

the withheld information relates to sensitive operations within the Intelligence Community, the

substance of which is properly classified in the interest of national security.   That is sufficient to grant summary judgment.").

> **f.      Records Withheld Under FOIA Exemption 3**

The FBI relies on three statutes in total and Fed. R. of Crim. P. Rule 6(e).   In conjunction with FOIA Exemption 1, the FBI is also asserting FOIA Exemption (b)(3) [50 U.S.C. § 3024(i)(1) (National Security Act of 1947)] as well as three other statutes, Hardy Decl., 41-45, ¶¶ 83-88.   Notably, the referral agencies with equities in the records also invoked FOIA Exemption 3.   For example, Army Intelligence and Security Command invoked FOIA Exemption 3 in conjunction with National Security Act to protect the mean and manner by which that agency functions and carries out its mission.   *See* Hardy Decl., Exhibit KK; *see also id*., Exhibit OO, Declaration of Rosemary Law (invoking FOIA Exemption 3 and the Bank Secrecy Act to protect sensitive financial information used for regulatory, law enforcement and national security).

FOIA Exemption 3 applies to matters "specifically exempted from disclosure by statute' if that statute either: (1) "requires that the matters [ ] be withheld from the public in such a manner as to leave no discretion on the issue," or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."   5 U.S.C. § 552(b)(3)(A)(i)-(ii).   The D.C. Circuit has explained that FOIA "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."   *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd*., 830 F.2d 331, 336 (D.C. Cir. 1987)).   Thus, agencies "need only show that the statute claimed is one of exemption as contemplated by Exemption 3

30

and that the withheld material falls within the statute." *Larson*, 565 F.3d at 865 (citing

*Fitzgibbon v. CIA*, 911 F.2d 755, 761-62 (D.C. Cir. 1990)).

"Rule 6(e) applies if the disclosed material would 'tend to reveal some secret aspect of

the grand jury's investigation,' including 'the identities of witnesses or jurors, the substance of

testimony, the strategy or direction of the investigation,' or 'the deliberations or questions of

jurors.'" *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013) (quoting *Senate of the*

*Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987)); *see also Fund for*

*Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869-70 (D.C. Cir. 1981)

("Potential witnesses and potential documentary exhibits [in a grand jury proceeding], while less

clearly within the rule, if disclosed would reveal the direction and strategy of the investigation.");

*Boehm v. FBI*, 983 F.Supp.2d 154, 157-60 (D. D.C. 2013) (same).   "The records to which the

FBI applied Exemption 3, in conjunction with Rule 6(e) here reflect that one or more federal

grand juries were empaneled in relation to the investigations at issue here and reveal matters

occurring before the grand jury/juries."   Hardy Decl. at 43, ¶ 86.   "Specifically, the

investigative files contains clearly labeled federal grand jury material, and information about the

names of recipients of federal grand jury subpoenas; information that identifies specific records

subpoenaed by a federal grand jury; and copies of specific records provided to a federal grand

jury in response to federal grand jury subpoenas.   Any disclosure of this information would

clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a

federal grand jury, and thus, the FBI is precluded from disclosing it."   *Id*.   Accordingly, the FBI

has withheld this information pursuant to Exemption 3, in conjunction with Rule 6(e). *Sanders v.*

*Holder*, 2011 U.S. App. Lexis 8326 at *1 (D. D.C. 2011) (The district court correctly held that

31

the government properly withheld the grand jury transcript under FOIA Exemption 3 because the transcript would reveal "such matters as the identities . . . of witnesses . . ., the substance of testimony, [and] the . . . questions of jurors.").

Title III requires that documents relating to the authorization process be withheld from the public.   Statutory provisions subjecting disclosure to judicial approval do not allow for discretionary administrative decision making, and are thus covered by Exemption 3(A) as dictating withholding "in such a manner as to leave no discretion on the issue."   *Fund for Constitutional Gov't*, 656 F.2d at 868 ("Any disclosure to persons outside of the government may only be made pursuant to a court order [under Rule 6(e) of the Federal Rules of Criminal Procedure]. Therefore, the [R]ule's ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of Exemption 3.").   Thus, Defendants have no discretion to disclose the records except under penalty of contempt and violation of Title III, thereby bringing section 2518(8)(b) under the first prong of Exemption 3.   *See Sinito v. DOJ*, Civ. No. 87-0814 (TFH), 2000 U.S. Dist. Lexis 22504, at *19-*20 (D. D.C. 2000) (FBI properly withheld Title III applications and affidavits from prisoner pursuant to Exemption 3; § 2518(8)(b) left FBI no discretion to disclose Title III information under court seal, and if such material became unsealed, it could be released only to the extent other FOIA exemptions did not apply); *aff'd*, 22 Fed. Appx. 1 (D.C. Cir. 2001); *see also Mendoza v. DEA*, 465 F.Supp.2d 5, 11 (D. D.C. 2006) (criminal defendant not entitled to information obtained by wiretap under Exemption 3), *aff'd*, 2007 U.S. App. Lexis 22175 (D.C. Cir. Sept. 4, 2007); *Morgan v. DOJ*, 923 F.2d 195, 197 (D.C. Cir. 1991) ("[T]he proper test for determining whether an agency improperly withheld records under seal is whether the seal, like an injunction, prohibits the agency from disclosing the

records.") (citing *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc*., 445 U.S. 375 (1980)).

Title III also fits within Exemption 3's second prong, because it establishes particular criteria for withholding documents generated in the Title III authorization process and refers to the particular matters to be withheld.   Although Exemption III's second prong is worded in the disjunctive Title III would meet both of those requirements.   *See Butler v. DOJ*, 1994 WL 55621, *7-8 (D. D.C. Feb. 3, 1994) (FBI agent's Title III affidavit properly withheld under Exemption 3 from prisoner seeking exculpatory evidence; "the procedures for obtaining a wiretap described in the relevant statutes do not contemplate making the affidavits submitted in support of each application publicly available."); *Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991) (DEA properly withheld transcripts of court-authorized intercepted conversations from prisoner seeking evidence withheld at his criminal trial; Title III "falls squarely within the scope of subsection (B)'s second prong, as a statute referring to 'particular types of matters to be withheld[.]'"); *Davis v. DOJ*, 968 F.2d 1276, 1280-81 (D.C. Cir. 1992) (interceptions exempt from FOIA; language of Title III "clearly evinces Congress' intent that intercepted material, except in a few well-defined circumstances, remain secret."); *Willis v. FBI*, No. 194 F. 3d 175 (D.C. Cir. 1999) (affirming grant of summary judgment as to FBI's decision to withhold tapes obtained pursuant to Title III where appellant alleged, without supporting evidence or offering a reason to doubt veracity of FBI's affidavits, that the tapes were not obtained pursuant to Title III); *Wolfson v. United States*, 672 F.Supp.2d 20, 28 (D. D.C. 2009) (contents of intercepts exempt pursuant to Exemption 3); *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 25 (D.D.C. 2002) (concluding that "the FBI validly applied Exemption 3 with regard to Title

III's general prohibition on the release of intercepted information").   Thus, the FBI lawfully

withheld Title III records under either prong of FOIA Exemption 3.

Thus, summary judgment would also be proper for the FBI's withholding of intelligence

sources and methods under the National Security Act, 50 U.S.C. § 3024(i)(1).   Hardy Decl. at

41, ¶ 83.   Given that Congress specifically prohibited the disclosure of information pertaining to

intelligence sources and methods used by the [Intelligence Community] as a whole, I have

determined that the FBI's intelligence sources and methods would be revealed if any of the

withheld information is disclosed to plaintiffs, and thus, the FBI is prohibited from disclosing the

information under 50 U.S.C. § 3024(i)(1).   *Id.*   Accordingly, this information was properly

withheld pursuant to Exemption 3, based on 50 U.S.C. § 3024(i)(1).   *Id.*   This Circuit has

interpreted the Act "broadly," holding that material is exempt if it *relates* to intelligence sources

and methods, or can reasonably be expected to lead to the unauthorized disclosure of intelligence

sources and methods [emphasis added].   *Leopold v. CIA*, 106 F.Supp.3d 51, 57 (D. D.C. 2015).

The exemption also extends to the "power to withhold superficially innocuous information on

the ground that it might enable an observer to discover the identity of an intelligence source or

method."   *Id.*   The Act presents an easier hurdle for the agency under Exemption 3 than does

under Exemption 1 because it does not require the FBI to determine that release of the

information could reasonably be expected to result in damage to national security.   *AP v. FBI*,

265 F.Supp. 3d 82, 97 (D. D.C. 2017).   Here, the withheld information relates to intelligence

sources and methods and summary judgment is appropriate under both FOIA Exemption 1 as

argued earlier and FOIA Exemption 3.   *Am. Ass'n of Women, Inc. v. DOJ*, 167 F.Supp.3d 136

(D. D.C. 2016) (deferring to Mr. Hardy's averment that information that could be used by

34

"hostile entities" to "develop countermeasures that would, in turn, severely disrupt the FBI's intelligence-gathering capabilities" are exempt from disclosure); *Brown v. FBI*, 873 F.Supp.2d 388, 401 (D. D.C. 2012) (pen-register information properly withheld under exemption 3); *Roberts v. FBI*, 845 F.Supp.2d 96, 101-102 (D. D.C. 2012).

###### g.  Defendant Properly Invoked FOIA Exemption 5

Both the FBI and invoked FOIA Exemption 5 deliberative process privilege lawfully to protect privileged records.   Defendant applied FOIA Exemption 5 to protect deliberative, intra-agency information responsive to Plaintiff's request, located within investigative records, as well as information within administrative emails.   The FBI applied Exemption 5 to protect pre-decisional information prepared in the context of agency employees' deliberations the disclosure of which would lay bare the FBI's deliberative process as it would reveal internal discussions and information FBI personnel thought were pertinent to their analysis, and their compilation and sorting of facts.   Hardy Decl. at 46, ¶ 93.   The materials are predecisional in that they precede final investigative and/or prosecutive decisions, and deliberative in that they played, and/or continue to play, a part in the process by which decisions were made about the scope, focus and direction of the investigations and pending/prospective prosecutions.   *Id.*

Under Exemption 5, agencies may withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   Exemption 5 incorporates the privileges that the Government may claim when litigating against a private party, including the governmental attorney-client and attorney work product privileges, the presidential communications privilege, the state secrets privilege, and the deliberative process privilege.   *See Baker & Hostetler LLP v.*

*Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006).   It covers records that would be

"normally privileged in the civil discovery context."   *NLRB v. Sears, Roebuck & Co*., 421 U.S.

132, 149 (1975).   To qualify as exempt under Exemption 5, "a document must meet two

conditions: its source must be a Government agency, and it must fall within the ambit of a

privilege against discovery under judicial standards that would govern litigation against the

agency that holds it."   *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C.

Cir. 2008).

The deliberative process privilege "protects agency documents that are both predecisional

and deliberative."   *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).   As a

general matter, notes taken by government officials often fall within the deliberative process

privilege.   *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (1980) (the

deliberative process privilege covers "subjective documents which reflect the personal opinions

of the writer rather than the policy of the agency").   Notes generally are selective and

deliberative and routine public disclosure of meeting notes and other notes would hinder

government officials from debating issues internally, deter them from giving candid advice, and

lower the overall quality of the government decision making process.   *See, e.g., Judicial Watch,

Inc. v. Clinton*, 880 F.Supp. 1, 13 (D. D.C. 1995) ("Disclosure of this type of deliberative

material inhibits open debate and discussion, and has a chilling effect on the free exchange of

ideas."), *aff'd*, 76 F.3d 1252 (D.C. Cir. 1996); *cf. Bureau of Nat'l Affairs, Inc. v. DOJ*, 742 F.2d

1484, 1494 (D.C. Cir. 1984) (recognizing possibility that notes might be withheld under

Exemption 5 because of "the potential chilling effect that disclosure of handwritten notes might

have on the activities of government employees").

The deliberative process privilege provides protection for those documents which reflect "advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated."   *Dep't of the Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 8-9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). The purpose of the privilege is three-fold: first, it "protects candid discussions within an agency;" second, "it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy;" and, third, "it protects the integrity of an agency's decision," preventing the public from judging officials based on information they may have considered prior to issuing their final decision.   *Alexander*, 192 F.R.D. 50, 55 (D. D.C. 2000) (citing *Judicial Watch*, 880 F.Supp. at 12).   The privilege promotes the quality of agency decision-making by protecting decision-makers' ability to communicate freely and privately without concern that deliberations will become the subject of discovery.   *Klamath Water*, 532 U.S. at 8-9.

Exemption 5 is most often invoked for documents authored by officers or employees of a U.S. government "agency."   *Klamath Water*, 532 U.S. at 8.   For FOIA purposes, the term "agency" is defined to mean, with certain exceptions not relevant here, "each authority of the Government of the United States."   5 U.S.C. §§ 551(1), 552(f)(1).   Because Congress defined "agency" to include only authorities of the U.S. Government, "intra-agency" and "inter-agency" are ordinarily read to refer only to documents created by officers or employees within the U.S. Government.   *Public Emps. for Envtl. Responsibility v. U.S. Section Int'l Water & Boundary Comm'n*, 740 F.3d 195, 201 (D.C. Cir. 2014).   In the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of its own employees that is an

integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.   *Ryan v. Dep't of Justice*, 617 F.2d 781, 789 (D.C. Cir. 1980).

Here, FBI invoked FOIA Exemption 5 deliberative process to protect its employees' candid advisory opinions, recommendations, and deliberations that were prerequisites to decisions regarding subjects' investigations and made in reasonable anticipation of litigation. Hardy Decl. at 46, ¶ 93.   In this instance, the requested material is pre-decisional, as a final action was not taken.   The information is quintessential deliberative process because it records "FBI staff providing advice, asking questions within the agency, and/or deliberating to determine a final decision and/or course of action."   *Id.*

The deliberative process privilege, "protect[s] materials that concern individualized decisionmaking" as well as "the development of generally applicable policy" and thus protects routine decisionmaking.   *Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998) (citing *Mapother v. DOJ*, 3 F.3d 1533, 1537-40 (D.C. Cir. 1993)); *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975) (documents that include "recommendations" or "opinions on legal or policy matters" are "clearly deliberative in nature").   Furthermore, the lack of a final decision is not dispositive when an agency can establish that there was a deliberative process of which the withheld material was a part.   *Public Emples. for Envtl. Responsibility v. EPA*, 926 F.Supp.2d 48, 58 (D. D.C. 2013).   Records about investigative steps the FBI could or should take and recommendations to the special agent as to how to proceed in the investigation, including recommendations to consider seeking a court order and coordinating with other agencies is protected by the deliberative process privilege.   *Poitras*, 303 F.Supp.3d at 153; *Peay v. DOJ*,

2007 U.S. Dist. Lexis 17586 *13 (D. D.C. 2007) (upholding the withholding of records prepared by FBI special agents supporting certain proposed actions in the criminal investigation of requester); *Paisley v. CIA*, 712 F.2d 686, 699, (D.C. Cir. 1983) (observing that "the information-gathering and deliberative process that produces" "a decision as to whether or not to prosecute someone" "is precisely the type of material to be protected as pre-decisional under Exemption 5"); *Heggestad v. DOJ*, 182 F.Supp.2d 1, 10 (D. D.C. 2000) ("[A]ll documents prepared by the agency with regard to this prosecution prior to the final decision . . . to authorize the prosecution . . . would be considered predecisional and allowing release of these memoranda would violate the intent of the deliberative process privilege.").   The documents withheld by both the ATF and the FBI are practically on all fours with the foregoing precedent and summary judgment is warranted.

## CONCLUSION

For the foregoing reasons, Defendant has demonstrated that there are no genuine issues of material fact and summary judgement should be entered in its favor.

October 31, 2019                              Respectfully submitted,


                                              JESSIE K. LIU, D.C. Bar #474845
                                              United States Attorney for the District of Columbia

                                              DANIEL F. VAN HORN, D.C. Bar # 924092
                                              Civil Chief



                                              By:_____/s/_____
                                              KENNETH ADEBONOJO
                                              39

Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.   20530
Telephone: (202) 252-2562