**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FOAD FARAHI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civil Action No. 15-2122 (RBW) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

The plaintiff, Foad Farahi, brings this civil action against the defendant, the Federal

Bureau of Investigation ("FBI"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, seeking the release of records related to a memorandum written by the defendant that was

introduced during the plaintiff's immigration removal proceedings.  <u>See</u> Complaint for Injunctive

Relief ¶¶ 1, 5, 8–13, ECF No. 1.  Currently pending before the Court is the defendant's motion

for summary judgment.  <u>See</u> Defendant's Motion for [ ] Summary Judgment ("Def.'s Mot."),

ECF No. 37.  Upon careful consideration of the parties' submissions,[1] the Court concludes for

the following reasons that it must deny the defendant's motion for summary judgment without

prejudice.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Answer ("Answer"), ECF No. 9; (2) the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 37-1; (3) the Defendant's Statement of Material Facts ("Def.'s Facts"), ECF No. 37-2; (4) the Declaration of David M. Hardy ("Hardy Decl."), ECF No. 37-3; (4) the Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 39; (5) the Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply"), ECF No. 41; (6) the Plaintiff's Reply in Opposition ("Pl.'s Surreply"), ECF No. 43; and (7) the sealed Declaration of David M. Hardy and attached exhibits, which are classified and were thus submitted <u>ex parte</u> to the Court for its <u>in camera</u> review, <u>see</u> Defendant's Motion for Leave to Submit Declaration Under Seal and <u>Ex Parte</u>, <u>In Camera</u>, in Support [of] Defendant's Motion for Summary Judgment at 1, ECF No. 36.

# I.    BACKGROUND

## A.    Factual Background

This case concerns ten FOIA requests submitted by the plaintiff to the defendant on June 28, 2014, <u>see</u> Def.'s Facts ¶ 2,[2] seeking records related to his "immigration removal proceedings[,]" <u>id.</u> at 1.  Specifically, the plaintiff seeks:

> The name, title, current deployment jurisdiction, and current contact information of the author or authors of a 2007 [ ] [m]emo[random ("the 2007 Memo") from the defendant] purportedly about him and the agent/polygrapher who examined [him] on November 8, 2004, and November 1, 2004.

> Any and all [ ] FD-302 interview reports[ from the defendant], and FD-209 reports regarding [him], any person discussed in any document that has been or will be presented to the immigration court, or any person that will be discussed in the proposed testimony by Supervisory Special Agent Andrew Lenzen ("Special Agent Lenzen"), and/or any other special agents during the course of his removal proceedings.

> The full and complete names and contact information, including, current address and phone numbers of all the confidential informants referred to by the [defendant] on its 2007 Memo, and identified as C-1, C-2, C-3, C-4, C-5, and the Trinidad and Tobago National interviewed by the [defendant] in Port of Spain Trinidad, on November 13, 2003.

> Any and all evidence and/or information gathered in connection with him as a result of the [defendant's] electronic surveillance, including but not limited to audio, video, computer, wireless, polygraph examination and/or data network surveillance.

> Any and all evidence and/or information gathered in connection with [him] and his alleged associations with the filing organizations in the United States: KindHearts for Charitable Humanitarian Development, Kind Hearts International, the Holy Land Foundation for Relief and Development, and the Global Relief Foundation.

---

[2] Local Civil Rule 7(h) requires that "[e]ach motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue[,]" and "[a]n opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated[.]"  LCvR 7(h).  Here, the defendant filed a statement of material facts along with its motion, <u>see</u> Def.'s Facts, however, the plaintiff failed to file "a separate concise statement of genuine issues" along with his opposition to the defendant's motion.  Because the plaintiff has "fail[ed] to comply with Local [Civil] Rule 7(h), the Court may assume that the facts identified by the moving party"—here, the defendant—"are admitted."  <u>Hunter v. Rice</u>, 480 F. Supp. 2d 125, 130 (D.D.C. 2007).

> Any and all records from other agencies in the possession of [the defendant] whether included in [his] file, such as the U.S. Department of Treasury; the U.S. Citizenship and Immigration Services, the U.S. Immigration and Customs Enforcement, the Internal Revenue Service ("IRS"), and the Florida Department of Highway Safety and Motor Vehicles.
>
> All documents maintained by [the defendant] or any other government agency, including the Joint Terrorism Task Force ("JTTF"), that names, mentions, discusses, or addresses in any manner whatsoever [the p]laintiff or persons allegedly associated with him.
>
> All documents, pursuant to the Jenks Act, in the [defendant's] possession regarding the p]laintiff or any person alleged to have a relationship with him whom the government regards as a terrorist.
>
> Any and all exculpatory evidence regarding [the p]laintiff or persons allegedly associated with him.
>
> A list of any and all documents released from the [defendant] to the OCC in Miami, [regarding the p]laintiff or persons allegedly associated with him.

Id. ¶ 3 (internal citations, quotation marks, and alterations omitted).

"By letter dated August 6, 2014, [the d]efendant notified [the p]laintiff that it had located approximately 10,750 pages of records and 80 CDs consisting of audio and video potentially responsive to the subject of [the p]laintiff's request." Id. ¶ 5 (internal quotation marks and alterations omitted). After the plaintiff filed his Complaint in this case on December 8, 2015, see Compl. at 1, the parties disputed the rate at which the defendant should process the responsive records, see Defendant's Proposed Schedule at 1, ECF No. 19; Plaintiff's Proposed Schedule at 1, ECF No. 20, and, on March 23, 2017, the Court directed the defendant to "process 500 pages of records per month and produce any non-exempt records to the plaintiff on a rolling basis." Minute ("Min.") Order (Mar. 23, 2017). "By letter dated April 6, 2017, [the d]efendant notified [the p]laintiff that it 'had examined 504 responsive pages and determined [that] the information was entirely exempt from disclosure pursuant to FOIA Exemption 7(A)[,]'" as well

as "'Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E).'"  Def.'s Facts ¶ 7 (quoting Hardy Decl. ¶ 15).

By letter dated May 2, 2017, the defendant informed the plaintiff that it had "'reviewed 63 pages

of records and released 61 pages of records in full or part, with certain information withheld

pursuant to [ ] Exemptions 6, 7(C), 7(D), and 7(E).'"  Id. ¶ 8 (quoting Hardy Decl. ¶ 14).

Between May 2017 and June 2019, during which the defendant made its last round of

productions, see id. ¶ 9 n.2 ("[The d]efendant's last records examination consisted of 381

responsive records." (citing Hardy Decl. ¶ 40)), the defendant "examined a minimum of 500

pages each month," which "were withheld in their entirety pursuant to [ ] Exemption 7(A)[,] as

well as . . . Exemptions 1, 3, 6, 7(C), 7(D), [and] 7(E)[,]" id. ¶ 9 (quoting Hardy Decl. ¶¶ 19–

40).[3]

## B.   Procedural History

On October 31, 2019, the defendant filed its motion for summary judgment, see Def.'s

Mot. at 1, as well as a motion for leave to file a classified declaration in support of its motion

under seal ex parte for the Court's in camera review, see Defendant's Motion for Leave to

Submit Declaration Under Seal and Ex Parte, In Camera in Support [of] Defendant's Motion for

Summary Judgment at 1.  On January 17, 2020, the plaintiff filed his opposition to the

defendant's motion, see Pl.'s Opp'n at 1; on March 17, 2020, the defendant filed its reply in

support of its motion, see Def.'s Reply at 1; and, on April 30, 2020, the plaintiff filed his

surreply, see Pl.'s Surreply at 1.

---

[3] The defendant also referred records to other government agencies for their evaluation, and they asserted the
following exemptions in addition to the defendant's assertion of Exemption 7(A): (1) the IRS withheld records
pursuant to Exemptions 3, 6, and 7(A), see id. ¶ 11; (2) the Naval Criminal Investigative Service withheld records
pursuant to Exemptions 6 and 7(C), see id. ¶ 12; (3) the Army's Intelligence and Security Command withheld
records pursuant to Exemptions 1, 3, 6, and 7(E), see id. ¶ 13; (4) the Social Security Administration withheld
records pursuant to Exemptions 6 and 7(C), see id. ¶ 14; (5) the Defense Intelligence Agency withheld records
pursuant to Exemption 1, see id. ¶ 15; (6) the Transportation Security Administration withheld records pursuant to
Exemption 3, see id.; and (7) the Treasury Department withheld records pursuant to Exemptions 3 and 7(E), see id.

On October 21, 2020, the Court issued an Order, granting the defendant's motion for leave to file the classified declaration under seal for the Court's in camera review.  See Order at 1 (Oct. 21, 2020), ECF No. 45.  Because (1) "'the validity of the [defendant's] assertion of [E]xemption [7(A)] c[ould ]not be evaluated without information beyond that contained in the public affidavits and in the records themselves[,]'" id. at 2 (quoting Arieff v. U.S. Dep't of the Navy, 712 F.2d 1462, 1471 (D.C. Cir. 1983)) (all but last two alterations in original); and (2) "'public disclosure of that information would compromise the secrecy asserted[,]'" id. (quoting Arieff, 712 F.2d at 1471), the Court concluded that "it [wa]s appropriate to file the [classified] declaration ex parte and under seal[,]" id.

## II.     STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment."  Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Justice, 863 F.2d 96, 101 (D.C. Cir. 1988) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007), and this burden "cannot be met by mere conclusory statements[,]" Wash. Post Co., 863 F.2d at 101.  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Justice, 830 F.2d 210,

217 (D.C. Cir. 1987), and by "show[ing] how release of the particular material would have the adverse consequence that the [FOIA] seeks to guard against[,]" Wash. Post Co., 863 F.2d at 101.

Moreover, courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)). However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Research Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

### III.   ANALYSIS

The defendant argues that, "[b]ecause [the] records [sought by the plaintiff] are law enforcement records and [their] release could interfere with an ongoing investigation, [it] correctly withheld all[ of the records], except [those that are] publicly available [ ], . . . under [ ]

Exemption 7(A)."[4]  Def.'s Mem. at 1–2.  In response, the plaintiff argues that the defendant has

not provided adequate information to justify the withholding of the records pursuant to

Exemption 7(A).  See Pl.'s Opp'n at 11–16.  The Court will first address whether the defendant

has appropriately withheld information pursuant to Exemption 7(A), before proceeding to

consider whether the defendant has released all reasonably segregable information.

## A.     Whether the Defendant Has Appropriately Withheld Information Under Exemption 7(A)

"Exemption 7 [of the FOIA] protects from disclosure 'records or information compiled

for law enforcement purposes,' but only to the extent that disclosure of such records would cause

[one of Exemption 7's] enumerated harm[s.]"  Lewis v. U.S. Dep't of Just., 867 F. Supp. 2d 1,

18 (D.D.C. 2011) (Walton, J.) (quoting 5 U.S.C. § 552(b)(7)).  To justify the withholding of

information pursuant to Exemption 7(A), an agency must show that "disclosure (1) could

reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or

reasonably anticipated."  Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,

746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting Mapother v. U.S. Dep't of Justice, 3 F.3d 1533,

1540 (D.C. Cir. 1993)).  In crafting this exemption, "Congress recognized that law enforcement

agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be

hindered in their investigations or placed at a disadvantage when it came time to present their

cases."  Alyeska Pipeline Serv. Co. v. Envtl. Prot. Agency, 856 F.2d 309, 313 (D.C. Cir. 1988)

(quoting Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978));

see also Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 762 (D.C. Cir. 2000) ("The principal

---

[4] The defendant "also invoked other [ ] FOIA exemptions[,] such as [ ] Exemptions 1, 3, 5, [6] and 7, in addition to [ ] Exemption 7(A)[,]" Def.'s Mem. at 2, however, because the Court concludes that the defendant has appropriately withheld the records pursuant to Exemption 7(A), the Court need not consider these alternative bases for the withholdings, see id. at 15–39, or the plaintiff's counterarguments, see Pl.'s Opp'n at 17–18.  See Larson v. Dep't of State, 565 F.3d 857, 862–63 (D.C. Cir. 2009) ("[C]ourts may uphold agency action under one exemption without considering the applicability of the other.").

purpose of Exemption 7(A) is to prevent disclosures [that] might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence.").  Despite these objectives, this exemption is not intended to be a "blanket exemption" for any files or records that are relevant to an investigation—their disclosure must be reasonably expected to interfere in a "palpable, particular way" with an investigation.  North v. Walsh, 881 F.2d 1088, 1100 (D.C. Cir. 1989).

## 1.   Whether the Records Were "Compiled for Law Enforcement Purposes"

First, the Court considers whether the withheld records were "compiled for law enforcement purposes" under Exemption 7.  "To show that the disputed documents were compiled for law enforcement purposes, [an agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law."  Blackwell v. Fed. Bureau of Investigation, 646 F.3d 37, 40 (D.C. Cir. 2011).  "With respect to the threshold requirement of showing that the disputed records were compiled for law enforcement purposes, courts 'are more deferential to the agency's claimed purpose for the particular records' when 'the agency's principal function is law enforcement,' and will 'scrutinize with some skepticism the particular purpose claimed' when 'the agency has mixed law enforcement and administrative functions.'"  Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 239 F. Supp. 3d 128, 132 (D.D.C. 2017).

Here, the defendant has adequately demonstrated that the withheld records were "compiled for law enforcement purposes[.]"  5 U.S.C. § 552(b)(7)(A).  As the Hardy Declaration notes, "the [defendant] is the primary investigative agency of the federal government" and has the "authority and responsibility to investigate all violations of federal law not exclusively

assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States."  Hardy Decl. ¶ 60.  Because the defendant is a law enforcement agency, the Court is thus "more deferential to [its] claimed purpose[s] for the particular records[.]"  Codrea, 239 F. Supp. 3d at 132.  Here, the defendant states that it "generated the responsive records in furtherance of investigations [into] violations of national security and international terrorism[,]" including "pending law enforcement proceedings and the [plaintiff's] association with individuals directly involved in such violations."  Hardy Decl. ¶ 60. Therefore, the Court concludes that the defendant has satisfied the threshold showing that the records sought by the plaintiff are law enforcement records for purposes of Exemption 7(A).

## 2. Whether Disclosure of the Requested Documents Could Reasonably Be Expected to Interfere with Enforcement Proceedings that Are Pending or Reasonably Anticipated

The Court now turns to whether the defendant has adequately shown that "disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated[,]" as required by Exemption 7(A).  Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1096 (quoting Mapother, 3 F.3d at 1540).  An agency withholding information pursuant to Exemption 7(A) is entitled to summary judgment when "the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that [the] material withheld is logically within the domain of the exemption claimed."  Juarez v. Dep't of Just., 518 F.3d 54, 58 (D.C. Cir. 2008).  The agency need not make a "specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding[,]" but rather the Court may make a general determination that, "with respect to particular kinds of enforcement proceedings, disclosure of particular kinds of

investigatory records while a case is pending would generally interfere with enforcement proceedings." Agrama v. Internal Revenue Serv., 282 F. Supp. 3d 264, 273–74 (D.D.C. 2017) (internal quotation marks omitted).  Because, here, the defendant "seeks to withhold records categorically under Exemption 7(A), its task becomes 'three-fold.'" Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 548 F. Supp. 3d 185, 207 (D.D.C. 2021) (quoting Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1098.  "First, it must define its categories functionally.  Second, it must conduct a document-by-document review in order to assign documents to the proper category.  Finally, it must explain to the [C]ourt how the release of each category would interfere with enforcement proceedings." Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1098.  The Court will address each task in turn.

      **a.**    **Whether the Defendant Has Defined Categories Functionally**

Beginning with the defendant's first task, the Court concludes that the defendant has "define[d] its categories functionally." Id.  A "functional[] category[,]" id., should "provide enough information to allow the Court 'to trace a rational link between the nature of the document and the alleged likely interference[.]'" Reporters Comm., 548 F. Supp. 3d at 207 (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 789 F.2d 64, 67 (D.C. Cir. 1986)). Here, according to the Hardy Declaration, "[t]he FBI [ ] grouped the records in the responsive main file and cross[-]reference[d] records into [two main] functional categories[:]" (1) "Evidentiary/Investigative Materials" and (2) "Administrative Materials[.]" Hardy Decl. ¶ 70 (underlines omitted); see also id. ¶ 65 (listing nineteen types of records contained within these functional categories).  The Hardy Declaration describes both categories, providing a full

explanation of the types of records within each main "functional category[.]"[5]  See id. ¶¶

70(A)–(B).  Accordingly, the Court concludes that the defendant has adequately "divid[ed] the

withheld documents into functional categories[,]" Reporters Comm., 548 F. Supp. 3d at 207,

which permits the Court to "trace a rational link between the nature of the document and the

alleged likely interference[,]" Crooker, 789 F.2d at 67.

### b.      Whether the Defendant Conducted a Document-by-Document Review

Second, the Court concludes that the defendant "conduct[ed the requisite]

document-by-document review in order to assign documents to the proper category." Citizens

for Responsibility & Ethics in Wash., 746 F.3d at 1098.  The Hardy Declaration explicitly states

that the defendant "reviewed each responsive document in this case to determine whether

Exemption 7(A) and any other exemptions appl[ied.]" Hardy Decl. ¶ 64.  Accordingly, the Court

concludes that the defendant has met its burden to review the withheld documents individually

"in order to assign documents to the proper category[.]" Citizens for Responsibility & Ethics in

Wash., 746 F.3d at 1098.

---

[5] According to the Hardy Declaration, the category of "Evidentiary/Investigative Materials . . . includes copies of records or evidence, and derivative communications discussing or incorporating evidence." Hardy Decl. ¶ 70(A) (underline omitted).  Evidentiary materials include "confidential source and witness statements[,]" id. ¶ 70(A)(i); "records documenting and detailing the exchange of information among law enforcement partners[,]" id. ¶ 70(A)(ii); and "[i]nformation concerning physical and documentary evidence[,]" including "records obtained from confidential sources[ or] through Federal Grand Jury subpoenas, search warrants, and/or correspondence between third parties[,]" id. ¶ 70(A)(iii).  "[D]erivative communications" "describe[], verbatim or in summary, the contents of the original record, how it was obtained, and how it relates to the investigation" or "report this information to other [ ] [f]ield [o]ffices or [ ] law enforcement agencies, either to advise them of the progress of the investigation, or to elicit their assistance in handling investigative leads." Id.

In contrast, according to the Hardy Declaration, the category of "Administrative Materials . . . include[s] items such as case captions, serial numbers, identities of [ ] field offices involved, dates of investigation, and detailed instructions designed to ensure that investigative procedures are conducted within the appropriate . . . guidelines[ of the defendant and the Department of Justice]." Id. ¶ 70(B).  The defendant divides this category into three subcategories: (1) "Reporting Communications[,]" which "permit the [defendant] and/or other agencies to monitor the progress of the investigation and to facilitate its conduct[,]" id. ¶ 70(B)(i); (2) "Miscellaneous Administrative Documents[,]" e.g., an "envelope used to store records obtained from a confidential source" that reflects "handwritten notations . . . identify[ing] dates, places, and the persons who provided the records[,]" id. ¶ 70(B)(ii); and (3) "Administrative Instructions[,]" which "disclose[] specific investigative procedures and strategies employed in this investigation[,]" id. ¶ 70(B)(iii).

c.     **Whether the Defendant Has Adequately Explained How the Release of Each Document Category Would Interfere with Enforcement Proceedings**

Third and finally, the Court is also convinced that the defendant has adequately "explain[ed] . . . how the release of each category would interfere with enforcement proceedings." Id.  Regarding this task, although the Court should "give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings[.]" Id.  Instead, the agency "must [ ] demonstrate how disclosure will do so." Id. (internal quotation marks omitted) (emphasis in original).  Specifically, to meet its burden, the agency must demonstrate that "disclosure of the[] documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." North, 881 F.2d at 1097.  The Court will therefore address in turn: (1) whether, for each functional category, the defendant has demonstrated that "release . . . would interfere with enforcement proceedings[,]" Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1098; (2) whether the enforcement proceedings at issue are pending or reasonably anticipated, see id. at 1097; and (3) the plaintiff's arguments regarding these questions.

i.     **Release of Evidentiary and Investigative Materials**

First, the Court is convinced that the defendant has adequately demonstrated that the release of the categorized "[e]videntiary[ and ]investigative materials[,]" Hardy Decl. ¶ 70(A) (capitalization omitted), would "interfere with enforcement proceedings[,]" Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1098.  According to the Hardy Declaration, the release of "confidential source and witness statements[,]" which "contain information obtained from confidential informants, records custodians, and other third party individuals who have knowledge of the criminal activities at issue[,]" could subject "the witnesses and/or confidential

sources who have chosen to cooperate with law enforcement . . . to retaliation, intimidation, or physical or mental harm." Hardy Decl. ¶ 70(A)(i) (capitalization omitted). In turn, these potential consequences "could have a chilling effect on the [defendant's] future investigative efforts and prosecutions in this and other cases" because "potential witnesses and/or confidential sources might fear exposure and reprisals from the subjects of th[ese] investigations[.]" Id. Similarly, according to the Hardy Declaration, the "[r]elease of records documenting and detailing the exchange of information among law enforcement partners" could "disclose investigative information developed by various agencies" that "would identify the investigative interest in particular individuals" and "subject witnesses and confidential sources to potential harassment, intimidation[,] and physical or mental harm." Id. ¶ 70(A)(ii). And, Hardy represented that the release of "[i]nformation concerning physical and documentary evidence[,]" including Federal Grand Jury subpoenas, search warrants, and/or correspondence between third parties . . . could be detrimental to [the] success of [ ] pending and prospective enforcement proceedings by permitting subjects to formulate a strategy as to how the evidence could be contradicted in [c]ourt." Id. ¶ 70(A)(iii).

Furthermore, the Hardy Declaration states that releasing "communications [that] permit the [defendant] and/or other agencies to monitor the progress of [an] investigation and to facilitate its conduct[ ]" would provide "detailed information about the investigative activities[,] . . . potential witnesses[,] and confidential sources[;]" as well as "background information about third party individuals, the origin of pertinent information that ties [these individuals] to the investigation, their connection with the subjects, and their relationship [to] the pending investigation." Id. ¶ 70(B)(i). According to the Hardy Declaration, this information, if released, would "reveal or confirm" (1) the cooperation of other local, state, or federal agencies

in the investigation[;]" (2) "the investigative steps taken to obtain witness and confidential

source interviews[;]" (3) the "techniques and investigative methods used to compile/solicit

information from various sources[;]" (4) "the perceived weaknesses in the investigation[;]" and

(5) "the nature and scope of the pending investigations."  Id.

These representations, in conjunction with the classified declaration and the exhibits

submitted with it, adequately demonstrate that disclosure of the evidentiary and investigative

materials could, in "particular[ and] discernible way[s], disrupt, impede, [and/]or otherwise harm

the enforcement proceeding[s,]" North, 881 F.2d at 1097.

### ii. Release of Administrative Materials

Similarly, the Court concludes that the defendant has adequately demonstrated that the

release of the categorized "administrative materials[,]" Hardy Decl. ¶ 70(B) (capitalization

omitted), would "interfere with enforcement proceedings[,]" Citizens for Responsibility & Ethics

in Wash., 746 F.3d at 1098.  According to the Hardy Declaration, because the subjects of the

defendant's "ongoing investigations . . . know[] the details surrounding the potential criminal

activities, the identities of potential witnesses, and the direct and circumstantial evidence of the

potential criminal activities[,]" they "could [ ] use the released information to their advantage to

alter[ or ]destroy[ evidence;] create false evidence[;] intimidate potential witnesses[; and] adjust

patterns of behavior to avoid detection and/or mislead investigations."  Hardy Decl. ¶ 68.

Although the defendant's declarant provides this rationale generally with respect to the release of

any withheld information to the plaintiff, see id., he also represents that "[i]n many instances,

administrative information is contained in correspondence or documents that also fall into other

categories[,]" id. ¶ 70(B), and "[t]herefore, release of details with respect to this category of

information would also reveal the investigative interests of the FBI and could enable suspects to

discern a 'road map' of the investigations[,]" id.  In addition, the defendant states that "the release of [the] information contained in these documents" would potentially result in (1) "the identification of individuals, sources, and potential witnesses . . . and possible harm, harassment, or intimidation of these individuals;" (2) "the use of released information to counteract evidence developed by investigators, alter or destroy potential evidence or create false evidence[;]" (3) "the use of information released to uncover the government's trial strategy;" (4) "the use of released information by any subject of the investigation to assess the likelihood that he or she may be prosecuted and/or convicted in connection with the investigation[;]" and (5) "the use of released information by any subject to adjust behaviors to avoid detection of ongoing criminal activities or mislead investigators."  Id. ¶¶ 68(a)–(e).

Moreover, according to the Hardy Declaration, releasing "communications [that] permit the [defendant] and/or other agencies to monitor the progress of [an] investigation and to facilitate its conduct[ ]" would provide "detailed information about the investigative activities[,] . . . potential witnesses[,] and confidential sources[;]" as well as "background information about third party individuals, the origin of pertinent information that ties [these individuals] to the investigation, their connection with the subjects, and their relationship [to] the pending investigation."  Id. ¶ 70(B)(i).  The declarant further states that this information, if released, would "reveal or confirm" (1) the cooperation of other local, state, or federal agencies in the investigation[;]" (2) "the investigative steps taken to obtain witness and confidential source interviews[;]" (3) the "techniques and investigative methods used to compile/solicit information from various sources[;]" (4) "the perceived weaknesses in the investigation[;]" and (5) "the nature and scope of the pending investigations."  Id.  Additionally, he represents that "disclosure of these materials could harm the investigation by providing details which, when

viewed in conjunction with knowledge possessed by the subjects, could provide information useful in identifying witnesses, investigative strategies, legal information, and items of evidence." Id. ¶ 70(B)(ii); see, e.g., id. (discussing as an example an "envelope used to store records obtained from a confidential source" that includes "handwritten notations" that "may identify dates, places, and the persons who provided the records"). Finally, according to the Hardy Declaration, releasing "administrative instructions . . . disclos[ing] specific investigative procedures and strategies" would "permit the subject of an investigation to anticipate and possibly alter or negate incriminating evidence [that] could be used in future prosecutions of him[, ]her[,] or other subjects." Id. ¶ 70(B)(iii). Based on these revelations, the Court concludes that the Hardy Declaration amply demonstrates "how the release of [the materials in this] category would interfere with enforcement proceedings." Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1098.

### iii.    Enforcement Proceedings that Are Pending or Reasonably Anticipated

Next, the Court considers whether the enforcement proceedings that would be impacted by the release of these documents are "pending or reasonably anticipated." Shapiro v. Dep't of Just., No. 12-cv-313 (BAH), 2020 WL 3615511, at *16 (D.D.C. 2020) (quoting Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1096. To prevail on this question, the defendant must demonstrate that "the material withheld relates to a concrete prospective law enforcement proceeding." Juarez, 518 F.3d at 58 (internal quotation marks omitted). "The proceeding must remain pending at the time of [the Court's] decision, not only at the time of the initial FOIA request[,]" and thus "reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close." Id.

Here, based on the Court's review of the Hardy Declaration, as well as the classified and ex parte declaration and accompanying exhibits, the Court concludes that the defendant has seemingly "met its burden to show that the records relate to "enforcement proceedings that are . . . pending or reasonably anticipated." Shapiro, 2020 WL 3615511, at *16 (quoting Citizens for Responsibility & Ethics in Wash., 746 F.3d at 1096).  The Hardy Declaration states that "[m]aterial responsive to [the p]laintiff's request is located in [the] files of ongoing investigations" and "[r]elease of any information, other than public source information from these files, could reasonably be expected to interfere with these pending criminal law enforcement proceedings, as well as potential enforcement proceedings such as spin-off investigations and/or prosecutions that may result from the investigations."  Hardy Decl. ¶ 66. Furthermore, according to the Hardy Declaration, "[t]he ongoing investigations are related to [the plaintiff] and others, and release of the requested information would allow such individuals to critically analyze documents concerning these international terrorism investigations."  Id. These representations, combined with the classified and ex parte declaration and accompanying exhibits, cause the Court to conclude that the defendant has seemingly demonstrated that the relevant "enforcement proceedings" are "pending or reasonably anticipated."  Shapiro, 2020 WL 3615511, at *16.

### iv.    The Plaintiff's Arguments

Despite the record before the Court, the plaintiff argues that disclosure of the requested documents would impact neither (1) "criminal enforcement proceedings[,]" Pl.'s Opp'n at 11, nor (2) "immigration enforcement proceedings[,]" id. at 15; and (3) "the [C]ourt should disregard [the defendant's] claims [regarding the potential impact on national security] in conjunction with" its reliance on Exemption 7(A) because "[n]ational security concerns are [ ] addressed"

under Exemptions 1 and 3[,]" id. at 16.  The Court is not persuaded by any of the plaintiff's arguments.

First, the plaintiff argues that several investigations by the defendant into his associates could not be impacted by the release of records in this case because any action resulting from those investigations would be barred by statutes of limitations.  See id. at 15.  However, despite the plaintiff's representations about the individuals and organizations that may be associated with the defendant's investigations, based on the Court's review of the Hardy Declaration and the classified ex parte declaration and exhibits submitted to the Court, the Court concludes that the defendant has seemingly established that the relevant "enforcement proceedings" remain "pending or reasonably anticipated[.]"  Shapiro, 2020 WL 3615511, at *16.

Second, the plaintiff argues that "generic withholding" of the records sought in this case due to their potential impact on his immigration removal proceedings is "inappropriate" because "the submission of evidence in the [p]laintiff's [removal] proceedings is now almost concluded[.]"  Pl.'s Opp'n at 16.  Again, based on the Court's review of the Hardy Declaration and the classified ex parte declaration and exhibits submitted to the Court, the Court concludes that the defendant has seemingly established that the relevant "enforcement proceedings" remain "pending or reasonably anticipated[.]"  Shapiro, 2020 WL 3615511, at *16.

Third, the plaintiff argues that "the [C]ourt should disregard [the defendant's] claims [regarding the potential impact on national security] in conjunction with" its reliance on Exemption 7(A) because "[n]ational security concerns are [ ] addressed" under Exemptions 1 and 3[,]" Pl.'s Mem. at 16.  The plaintiff is correct that Exemptions 1 and 3 provide for the withholding of records that implicate national security concerns.  See 5 U.S.C. § 552(b)(1) ("This section does not apply to matters that are[] [ ] (A) specifically authorized under criteria

established by an Executive order to be kept secret in the interest of national defense or foreign

policy and (B) are in fact properly classified pursuant to such Executive order[.]"); <u>see also</u> <u>id.</u>

§ 552(b)(3) ("This section does not apply to matters that are[] . . . specifically exempted from

disclosure by statute[.]"); <u>Larson v. Dep't of State</u>, 565 F.3d 857, 868 (D.C. Cir. 2009) (noting

that "section 6 of the National Security Act . . . qualifies as an Exemption 3 statute").  However,

for the following reasons, the Court concludes that it cannot disregard the defendant's

representations regarding the potential impact on national security.

    As the defendant correctly notes, <u>see</u> Def.'s Reply at 5–6, there is a "principle of

deference to the executive in the FOIA context[—including in regards to Exemption 7(A)—

]when national security concerns are implicated."  <u>Ctr. for Nat. Sec. Studies v. U.S. Dep't of</u>

<u>Just.</u>, 331 F.3d 918, 927 (D.C. Cir. 2003).  As the District of Columbia Circuit has noted, "in the

FOIA context, [courts] have consistently deferred to executive affidavits predicting harm to the

national security . . . so long as the government's declarations raise legitimate concerns that

disclosure would impair national security[,]" <u>id.</u> at 927–28; <u>see also</u> <u>id.</u> (concluding that there

was not "any reason to limit deference to the executive in its area of expertise to certain FOIA

exemptions so long as the government's declarations raise legitimate concerns that disclosure

would impair national security").  Because the Court has concluded that the defendant's

"declarations raise legitimate concerns that disclosure would impair national security[,]" <u>Ctr. for</u>

<u>Nat. Sec. Studies</u>, 331 F.3d at 928, the Court defers to the declarations submitted by the

defendant, which demonstrate that the "disclosure of the documents would, in some particular,

discernible way, disrupt, impede, or otherwise harm the enforcement proceeding[s,]" <u>North</u>, 881

F.2d at 1097.

19

Accordingly, for the above reasons, and based on the Court's review of the Hardy Declaration and the classified declaration and accompanying exhibits submitted ex parte to the Court, the Court concludes that the defendant has seemingly withheld the requested information properly pursuant to Exemption 7(A). The Court's ruling is inconclusive because a significant time has passed since the filing of the Hardy Declaration and the classified ex parte declaration on October 31, 2019, due to the size of the Court's docket. See Def.'s Mot. at 1; Defendant's Motion for Leave to Submit Declaration Under Seal and Ex Parte, In Camera in Support [of] Defendant's Motion for Summary Judgment at 1. And, because "[t]he [relevant] proceeding [under Exemption 7(A)] must remain pending at the time of [the Court's] decision, not only at the time of the initial FOIA request[,]" Juarez, 518 F.3d at 58 (internal quotation marks omitted), the Court will deny the defendant's motion without prejudice and require the defendant to reassess whether the relevant "enforcement proceedings" remain "pending or reasonably anticipated[,]" Shapiro, 2020 WL 3615511, at *16, as described in the declarations submitted to the Court. Once the defendant has completed this review, it may file a renewed motion for summary judgment based on either Exemption 7(A), if the relevant proceedings remain pending or reasonably anticipated, or on the other FOIA exemptions asserted in the defendant's motion.

## B.     Segregability

The Court now turns to whether the defendant has provided all reasonably segregable records to the plaintiff. Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under [ ] subsection [552(b)]." 5 U.S.C. § 552(b). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18

(D.D.C. 2004) (Walton, J.) (emphasis omitted).  Therefore, because "[t]he focus of the FOIA is information, not documents, [ ] an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  Mead Data Ctr., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  "A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability[,]" Judicial Watch, Inc. v. U.S. Dep't of Def., 245 F. Supp. 3d 19, 36 (D.D.C. 2017) (Walton, J.), "even if the requester did not raise the issue of segregability before the court[,]" Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

In order to assess segregability, a "district court must be provided with a 'relatively detailed description' of the withheld material."  Judicial Watch, Inc., 245 F. Supp. 3d at 36 (citing Goldberg v. U.S. Dep't of State, 818 F.2d 71, 78 (D.C. Cir. 1987)).  To comply with this requirement, "[a]gencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether 'the result would be an essentially meaningless set of words and phrases.'"  Id. at 36–37 (citing Mead Data Ctr., 566 F.2d at 261).  "[T]o show that an entire document cannot be produced[,]" an agency must conduct "[a] 'document-by-document' review and [provide] a declaration that each piece of information that is withheld is not reasonably segregable[.]"  Id. (citing Juarez v. U.S. Dep't of Just., 518 at 61).  Although "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" Ecological Rts. Found. v. U.S. Envtl. Prot. Agency, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (quoting Sussman, 494 F.3d at 1117), an "agency must provide a detailed justification for [the exempt material's] non-segregability[,]" id. (quoting Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002)) (internal

quotation marks omitted) (alterations in original).  Generally, "[a]ffidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a <u>Vaughn</u> index describing the withheld record, suffice."  <u>Id.</u> (quoting <u>Johnson</u>, 310 F.3d at 776).

Here, for reasons that cannot be stated on the public record, the Court concludes that it requires additional information in order to issue a ruling on the merits regarding whether the defendant satisfied its segregability obligations under the FOIA.  Accordingly, the Court will also deny the defendant's motion without prejudice as to the segregability issue, and will issue a separate, sealed, and <u>ex parte</u> order setting forth its ruling in detail.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny without prejudice the defendant's motion for summary judgment.

**SO ORDERED** this 30th day of November, 2022.[6]

REGGIE B. WALTON
United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.